HON. WILLIAM H. HUNT, } Associate Justices..
HON. HORACE R. BUCK, }

## HELENA CONSOLIDATED WATER CO., RESPONDENT, v. WM. L. STEELE, MAYOR, ETC, ET AL., APPELLANTS.

(Submitted May 28, 1897, Decided June 7th, 1897.)

*Constitution—Legislative Control of Municipalities— Water Works.*

Political Code, § 4800, subdivision 64, providing that no municipality having a water supply by private persons shall erect any water plant to be operated by itself, but, if it desires to acquire such a plant, shall purchase or condemn that owned by such private persons, is in conflict with Constitution art. 12, § 4, prohibiting the legislative assembly from levying taxes for municipal purposes.

As applied to municipalities having contracts with private persons for water supply at the enactment of the statute, it also violates Constitution art. 15, § 13, forbidding the legislative assembly to impose on the people of any municipality a new liability in respect to past transactions or considerations.

*Appeal from District Court, Lewis and Clarke county. Henry N. Blake, Judge.*

Suit by injunction by the Helena Consolidated Water company against William D. Steele, mayor, and others, clerk and council of the city of Helena. From a restraining order, defendants appeal. Reversed.

Statement of the case by the justice delivering the opinion.

This is a suit by injunction. It appears from the record that on the 29th day of July, 1895, an election was held in the city of Helena by which the legal voters of said city decided that the city might extend the limit of its indebtedness for the purpose of securing a water supply under the authority of section 6, art. 13, of the constitution of the state, and the laws passed in pursuance of such constitutional provision. At a meeting of the city council of said city, after it had been determined by said election that the city might extend its indebtedness for the purpose aforesaid, the city council, by resolution, directed the city clerk to advertise for bids for a supply of water to be furnished to, owned and controlled by, said city in accordance with plans and specifications which had theretofore been adopted by said city council. Thereafter the plaintiff water company commenced this suit to restrain the city from receiving bids for said purpose; the plaintiff contending in its complaint that it had established and was maintaining a water system in said city, and that by means of its said system the city had been for a long time furnished, and was then being furnished, with an ample supply of pure and wholesome water, and that under the provisions of subdivision 64 of section 4800 of the Political Code of the state the city was compelled by ordinance to purchase the water system of plaintiff, and had no authority to advertise for bids or to enter into any contract with any other person or persons,

corporation or corporations, for a system of water supply for the inhabitants of said city.

The defendants answered, and, among other things, deny that the city is prohibited from purchasing or supplying itself with another water system for the use of the city and its inhabitants by the provisions of the law above referred to or by any other law.

On a hearing the court issued its order restraining the defendants from advertising for bids for a water plant to be owned and operated by the city of Helena, in accordance with the prayer in the complaint. From this order the appeal is prosecuted.

*M. Bullard, H. G. & S. H. McIntire,* and *Toole & Wallace,* for Appellants.

*B. P. Carpenter* and *Clayberg, Corbett & Gunn,* for Respondents.

Pemberton, C. J.—There are a number of errors assigned in this record. The action of the court in striking out parts of appellants' answer is complained of. It is contended that the law referred to in the statement was not enacted in accordance with the requirements of the constitution. But we agree with the counsel for respondent that the only question presented for our determination is as to the constitutionality of the last two provisos of subdivision 64 of section 4800 of the Political Code. We shall not, therefore, discuss any minor matters involved, but proceed to an investigation of the real issue presented.

The two provisos involved constitute part of the law in relation to the legislative powers of incorporated cities and towns in this state. They read as follows :

' Provided, that whenever a franchise has been granted to, or a contract made with, any person or persons, corporation or corporations, and such person or persons, corporation or corporations, in pursuance thereof and in good faith, have established and maintained a system of water supply, the city

or town granting such franchise, or entering into such contract, before taking any action for the procurement of a water supply to be owned or controlled by such city or town, shall, by the passage of an ordinance, give notice to such person or persons, corporation or corporations, that it desires to purchase the plant and franchise of such person or persons, corporation or corporations, it shall have the right to so purchase the said plant upon such terms as the parties may agree ; in case they cannot agree then the said city or town may proceed to acquire the same under the laws relating to the taking of private property for public use.''

''Provided, that no city or town having a water supply furnished by private parties, under a contract or franchise entered into, or granted by the city or town, shall proceed to the erection or construction of a water plant to be operated by it, but in case the city or town shall desire to own and operate its water supply it shall acquire the plant already in operation therein as herein provided.''

Has the legislature, by this enactment, undertaken to impose upon the city of Helena and its inhabitants an obligation unauthorized by the constitution, without the consent and against the will of the city council and the legally constituted authorities of the city ?

By the first of these two provisos it became the duty of the city, before taking action to procure a water supply to be owned or controlled by the city, to pass an ordinance notifying the plaintiff, the owner of the water supply system then in operation, that it desires to purchase the plant and franchise of the plaintiff upon such terms as might be agreed upon, and in case of disagreement the city would proceed to acquire the plant of plaintiff by condemnation proceedings.   The second proviso makes it absolutely incumbent upon the city, and all cities similarly situated, to purchase whatever water plant or system is in operation and owned by any person or corporation under contract entered into with or franchise granted by the city or town, at the time such city or town decides to procure, own, or control a water system of its own.   If any city

or town desires to own its own water plant or system, this law requires it to purchase whatever water plant or system is owned or controlled by any person or corporation under any contract or franchise entered into with or granted by said city or town. The law compels the city or town to purchase, in one of the ways specified, whatever plant or system that is so owned or controlled in said city or town by any person or corporation under any contract entered into with or franchise granted by said city or town. The city or town has no d s-. crétion in the matter. The requirements of the statute are compulsory. To purchase such plant or system necessarily requires the city or town to incur an indebtedness. When an indebtedness is incurred by a city or town, it necessarily requires the assessment of taxes upon the property of the inhabitants, and the collection thereof, to meet and discharge such indebtedness. Is such indebtedness or obligation such a one as the state has the right to impose upon a city or town, or compel a city or town to assume without its consent? A city or town is bound to do and perform, and may be compelled to perform, certain public duties. But there are certain local and private obligations and offices which a city or town may or may not perform, and which they cannot be compelled by the state to perform.

D scussing and distinguishing the questions here involved, Judge Cooley, in *People* v. *Common Council of Detroit*, 28 Mich. 228, 15 Am. Rep. 206, says :

"In *People* v. *Hurlbut*, 24 Mich. 44, 9 Am. Rep. 103, we considered at some length the proposition which asserts the amplitude of legislative control over municipal corporations, and we there conceded that, when confined, as it should be, to such corporations as agencies of the state in its government, the proposition is entirely sound. In all matters of general concern there is no local right to act independently of the state ; and the local authorities cannot be permitted to determine for themselves whether they will contribute through taxation to the support of the state government, or assist when called upon

to suppress insurrection, or aid in the enforcement of the police laws. Upon all such subjects the state may exercise compulsory authority, and may enforce the performance of local duties, either by employing local officers for the purpose, or through agents or officers of its own appointment. The same doctrine was declared in *People* v. *Mahaney*, 13 Mich. 481, and in *Bay City* v. *State Treasurer*, 23 Mich. 503. It was also recognized in the statement that in the levy of taxes for purpose of general concern the municipal bodies cannot demand a right to be consulted, and their consent is immaterial. And we concur fully in the views which have been expressed by other courts in the cases to which our attention was called on the argument that, as regards duties which the people in the several localities owe to the commonwealth at large, they cannot be allowed a discretionary authority to perform them or not, as they may choose. Such an authority would be wholly inconsistent with anything like regular or uniform government in the state.

But we also endeavored to show in *People* v. *Hurlbut* that, though municipal authorities are made use of in state government, and as such are under complete state control, they are not created exclusively for that purpose, but have other ob-jects and purposes peculiarly local, and in which the state at large, except in conferring the power and regulating its exercise, is legally no more concerned than it is in the individual and private concerns of its several citizens. * * * We also referred in *People* v. *Hurlbut* to several decisions in the federal supreme court and elsewhere, to show that municipal corporations considered as communities endowed with peculiar functions for the benefit of their own citizens, have always been recognized as possessing powers and capacities, and as being entitled to exemptions, distinct from those which they possess or can claim as conveniences in state government. If the authorities are examined, it will be found that these powers and capacities, and the interests which are acquired under them are usually spoken of as private in contradistinction to those in which the state is concerned, and which

are called public, thus putting these corporations, as regards all such powers, capacities, and interests, substantially on the footing of private corporations. This distinction is very carefully drawn in *Bailey* v. *New York*, 3 Hill, 531, which concerned the New York waterworks, and also in *Small* v. *Inhabitants of Danville*, 51 Me. 359, *Philadelphia* v. *Fox*, 64 Pa. St. 180, and *Western College of Homeopathic Medi-cine* v. *City of Cleveland*, 12 Ohio St. 375. It is well stated by Lewis, C. J., in *Western Sav. Fund Soc.* v. *Philadelphia*, 31 Pa. St. 183, in speaking of a municipal corporation as the owner of gas works. 'The supply of gaslight,' he says, 'is no more a duty of sovereignty than the supply of water. Both these objects may be accomplished through the agency of individuals or private corporations, and in very many instances they are accomplished by these means. If this power is granted to a borough or a city, it is a special private franchise, made as well for the private emolument and advantage of the city as for the public good. The whole investment is the private property of the city ; as much so as the houses and lands belonging to it.' "

Upon the same question Chief Justice Breese, in *People* v. *Mayor*, etc., of *Chicago*, 51 Ill. 17—a case involving the question as to whether the city of Chicago could be compelled without its consent to assume a local indebtedness—said :

''If the principle be admitted that the legislature can, uninvited, of their mere will, impose such a burden as this upon the city of Chicago, then one much heavier and onerous can be imposed ; in short, no limit can be assigned to legislative power in this regard. If this power is possessed, then it must be conceded that the property of every citizen within it is held at the will and pleasure of the legislature. Can it be that the general assembly of the state, just and honest as its members may be, is the depositary of the rights of property of the citizens? Would there be any sufficient security for property if such a power was conceded? No well-regulated mind can entertain the idea that it is within the constitutional competency of the legislature to subject the earnings of any portion of our people to the hazards of such legislation.''

We fail to perceive any real difference, in principle, in forcing this burden upon the city, and imposing a like burden, by the direct action of the legislature, upon individual property owners within it, for in both cases the debt at maturity must be paid by such holders, while the accruing interest is a constant drain upon their resources.

"No case amid the multitude which have been cited by the relators goes to the extent of this, and, with our understanding of the constitution, no warrant is found there for such legislation. Rather than attempt to compel submission to such a law, surely, the alternative should be presented to the city, to be deprived of its corporate franchises, for cases, if such legislation is sanctioned, may arise where a city would prefer such deprivation in preference to incurring a debt which might prove greatly detrimental to their prosperity, or wholly ruinous."

Judge Breese was discussing the power of the legislature to impose these local burdens or debts upon cities or towns under the constitution of Illinois, and concludes that the legislature has no such power.

Section 5, art. 9, of the Illinois constitution, under which the decision referred to was rendered, gave the power to cities and towns to assess and collect taxes for corporate purposes.

The provision of our constitution upon the subject is as follows : "The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or municipal corporation for county, town or municipal purposes, but it may by law vest in the corporate authorities thereof powers to assess and collect taxes for such purposes." Const. art. 12, § 4.

It will be seen that our constitutional provision is much stronger, and goes much further in favor of the powers of cities and towns to assess and collect municipal taxes, than does the Illinois constitution. Our constitution says the legislature shall not levy taxes upon the inhabitants or property in any city or town for municipal purposes. It cannot be disputed that the indebtedness sought to be imposed upon the

cities and towns by the legislation under discussion, without their consent, is for local municipal purposes. Nor can it be disputed that to compel the city of Helena, and other cities and towns, to assume such indebtedness against its will by this legislation, also compels the assessment and collection of taxes by the city against its will for the purpose of paying this compulsory indebtedness.

Speaking of such legislation. Judge Cooley, in *People* v. *Common Council of Detroit. supra*, says: "The constitutional principle that no person shall be deprived of property without due process of law applies to artificial persons as well as natural, and to municipal corporations in their private capacity, as well as to corporations for manufacturing and commercial purposes. And when a local convenience or need is to be supplied in which the people of the state at large or any portion thereof outside the city limits, are not concerned, the state can no more, by process of taxation, take from the individual citizens the money to purchase it, than they could, if it had been procured, appropriate it to state use. To this extent the corporate right appears to us to be a clear and undoubted exception to the general power of control which is vested in the state.

"Whoever insists upon the right of the state to interfere and control by compulsory legislation the action of the local constituency in matters exclusively of local concern should be prepared to defend a like interference in the action of private corporations and of natural persons. It is as easy to justify, on principle, a law which permits the rest of the community to dictate to an individual what he shall eat, and what he shall drink, and what he shall wear, as to show any constitutional basis for one under which the people of other parts of the state, through their representatives dictate to the city of Detroit what fountains shall be erected at its expense for the use of its citizens, or at what cost it shall purchase, and how it shall improve and embellish, a park or boulevard for the recreation and enjoyment of its citizens. The one law would rest upon the same fallacy as the other, and the reason for opposing and contesting it would be the same in each case."

Upon this subject Chief Justice Breese, in *People* v. *Mayor*, *etc.*, *of Chicago*, *supra*, says : "So sensibly impressed were the framers of our constitution of the liability of legislative bodies to incur debts, sometimes for objects not entirely praiseworthy or useful, and the hazards losses, and disturbances to which they lead, that they interposed the power of the people at the very threshold to prevent this danger, to tie up the hands of the legislature on this subject, to divest it of a power which dear-bought experience has satisfied the people should not be left unrestrained.

"The burden imposed by this law upon a fractional part of this state is tenfold heavier than the legislature can impose upon the people of the whole state, without their previous consent, manifested by a vote at a general election. In view of this wise and salutary provision of the constitution, can it be seriously contended that the legislature can. exercise the assumed power to force one and all the municipalities of the state to incur debts amounting to millions of dollars by one da h of the legislative pen, for corporate purposes, when, to meet the most urgent demands of the public, and provide for the general welfare, they cannot create a debt against the state exceeding the sum of $50,000? The proposition is so inconsistent with the spirit and plain intention of this provision that it can receive no favor in this court.

"How can we hold, in view of the protection this clause was designed to give the people of the whole state, that the people of a particular municipality can be subjected to a corporate debt without the consent either of the people to be taxed or their corporate authorities?

"The protection of the whole implies, necessarily, the protection of all its organized parts, and the whole cannot be secure while all or any of its parts are exposed to danger. What is the real value of this provision of the constitution, if the legislature inhibited from incurring a debt beyond $50,000 on behalf of the state may force a debt tenfold or one hundred fold greater (for there is no limit to the power) upon all the cities of the state? We can perceive none. Where these

municipalities become so indebted by compulsion of the legislature, the whole state in its real and substantive, if not in its corporate, body, will in truth and in fact be the debtor, for the same power of coercion can be applied to counties and towns, and, as the state is made up of cities, counties and towns, the whole state may thus become involved. This provision, then, would be no restriction upon the power to create a debt beyond a certain amount, and would fail of its purpose of protecting the state and its citizens from oppressive burdens. Those citizens who are to be affected by the debt should certainly have some voice in its creation, on the same principle that the people of the whole state are to express their consent, by a vote, to the creation of a debt affecting them and their material interests.''

These two decisions from which we have quoted so largely, delivered by two of the ablest jurists that this country has produced, are leading cases upon the questions involved in this appeal. These two distinguished judges declare that the cases have been exhaustively argued by the best lawyers of the respective states. These cases are, in our judgment, absolutely conclusive of the one question presented by this appeal, namely, the constitutionality of the compulsory statute under which this action is prosecuted. See, also *People v. Batchellor*, 53 N. Y. 128; 13 Am. Rep. 480, 1 Dill. Mun. Corp. (4th Ed.) § 72 *et seq.*

It is contended by appellants that the law in question is void, because in violation of section 13, art. 15, of the constitution, in that ' it imposes on the people of the city a new liability in respect to transactions or considerations already passed.''

At the time of the enactment of this law the city was under no obligation to buy the plaintiff's water plant. The fact that the plaintiff had established, was the owner of, and was controlling and operating. its plant under the contract with, or franchises granted by, the city, at the time of the enactment of the law, constituted no valid consideration for this compulsory indebtedness. If this constituted a considera-

tion, it was passed. Under the contract or franchise upon which the plaintiff bases its right of action the city reserved the right to enter into contracts with and purchase water from any other person or corporation for city purposes. The city, so far as shown, has never at any time assumed any sort of obligation to purchase plaintiff's plant.

It is contended that the moral obligation of the city to assume this compulsory indebtedness is sufficient to support the law and relieve it of its unconstitutionality, if it be in conflict with the constitution.

But we are unable to see what moral obligation the city is under, or has ever assumed, that would bring the law under the rule contended for by counsel for respondent. The city never agreed to continue for all time to buy water of the plaintiff. It expressly reserved the right to do otherwise. Plaintiff's plant may not be capable of furnishing an ample supply of wholesome water for the inhabitants of the city, either now or as the city may expand and increase in population in the future. The plant and system may be practically worthless. It may be so involved in debt and incumbered that the plaintiff could convey no title for any sum proportionate to its real value. To purchase the plant might so increase the indebtedness of the city as to exceed the constitutional limit, or, at any rate, so as to become ruinous to the inhabitants of the city. The city may be able to procure a water system and supply for half what plaintiff's plant would cost. Is there any such moral obligation on the part of the city disclosed in this case as would justify this court in compelling it to assume the indebtedness necessary for it to assume in order to purchase plaintiff's plant, and tax the people for the money to meet such indebtedness, in total disregard of all these possible and probable events? Shall it be said, in obedience to this law, that the city authorities, the legal representatives of the inhabitants of the city, have no discretion in the premises, but must obey, notwithstanding disaster and oppressive taxation and ruin may come upon the people as a consequence?

We think the two provisos of the law under discussion are in violation of the clauses of the constitution quoted and referred to above, as well as the spirit of our governmental system, which recognizes "that the people of every hamlet, town, and city of the state are entitled to the benefits of local self-government." The law is not supported by any moral obligation, but is rather a violation of law, equity, the constitution, as well as the principle of moral obligation invoked by the respondent. It violates the general rule of the law that the consent of parties to a contract is essential to its validity, whether the parties be natural or artificial persons. We are at a loss to find any theory of law, equity, or justice upon which we can conscientiously sustain the constitutionality of the statute in question.

The judgment and order appealed from are reversed, and the cause remanded, with directions to dissolve the injunction and dismiss plaintiff's complaint.

*Reversed.*

HUNT and BUCK, JJ., concur.