PUBLIC SERVICE COMMISSION, APPELLANT, *v.* CITY OF HELENA ET AL., RESPONDENTS.

(No. 3,830.)

(Submitted June 23, 1916.   Decided July 17, 1916.)

[159 Pac. 24.]

*Public Service Commission—Cities and Towns—Water Plants— Powers—Constitution—Police Power.*

Cities and Towns—Water Plants—Indebtedness—Powers.
    1.   The power exercised by a city under section 3259, subdivision 64, to issue bonds and procure, own and control a water system, is proprietary in character, as distinguished from its governmental capacity.
Same—Water Plants—Control by State.
    2.   Where a city acquires a water supply without resort to indebtedness beyond the constitutional three per cent of the city's taxable property, it stands on an equal footing with an individual or private corporation engaged in furnishing water to it and its inhabitants, and is

subject to all reasonable regulation and control by the state under the police power.

Same—Water Plants—Regulation by Public Service Commission.

3.    A city which has acquired a water supply by resorting to the extended limit of indebtedness is not thereby exempted from control and regulation by the state through the agency of the Public Service Commission under Chapter 52, Laws of 1913.

Same—Water Plants—Indebtedness—Constitution.

4.    Under the rule that, since the state Constitution limits, rather than grants, power, any provision of that instrument open to construction should be held to come within the general rule, unless a contrary conclusion is forced by the circumstances of the particular case, *held* that the provision of section 6, Article XIII, of the Constitution, relative to ownership and control of a water supply procured through resort to the extended limit of indebtedness, and application of revenue therefrom, must be understood as expressing constitutional restrictions imposed as a condition to the exercise of the privilege implied in the provision for extended indebtedness, and not as a grant of power not enjoyed by a city acquiring a water system without incurring additional indebtedness.

Constitutional Law—Police Power.

5.    Though no specific provision of the Constitution forbids it, the legislature is without authority to surrender altogether the police power.

Cities and Towns—Police Power.

6.    However positive the terms of the grant of police power to a municipality, the state will be held to have retained its original jurisdiction over the same subject, and to possess the authority to exercise it concurrently with the municipality.

Same—Public Service Commission—Constitution.

7.    Chapter 52, Laws of 1913, creating a Public Service Commission and defining its powers, does not infringe the provision of section 36, Article V, of the Constitution, prohibiting the delegation of certain powers to special commissions, the Public Service Commission not being a "special commission" within the meaning of that section.

Same—Water Rentals—Not Taxes.

8.    Chapter 52, Laws of 1913 above, does not run counter to section 4, Article XII, of the Constitution, prohibiting the legislature from levying taxes for municipal purposes, no tax being actually levied by the commission and the regulation of water rentals not constituting a levy of taxes.

Same—Public Service Commission—Regulations must be Reasonable.

9.    Regulations made by the Public Service Commission must be reasonable in order to be valid, and any regulation which imposes upon a city an obligation which is invalid is not reasonable.

Same—Water Plants—Constitution—"Revenues"—Definition.

10.    The "revenues" referred to in section 6, Article XIII, of the Constitution, which must be devoted to a discharge of the indebtedness incurred in procuring the water system, are the net revenues,—the gross receipts less the necessary operating expenses,—against which the expense of regulation by the Public Service Commission, if reasonable, is chargeable.

Same—Public Service Commission—Powers—How to be Construed.

11.    Chapter 52, Laws of 1913, conferring authority upon the Public Service Commission, must be construed in harmony with the theory of self-government in cities and the retention of police power by the state.

Same—Water Plants—Control and Supervision.
    12.   Chapter 52 does not take away from a city the active management
of its water plant or the authority to appoint or supervise the officers
and employees necessary to operate it.
    [As to *mandamus* or prohibition to control act of Public Service Com-
mission,. see note in Ann. Cas. 1914D, 795.]

*Appeal from District Court, Lewis and Clark County; R. Lee
Word, Judge.*

PROCEEDINGS by the Public Service Commission of Montana
against the City of Helena and its executive officers.   Judg-
ment for defendants and plaintiff appeals.   Reversed and
remanded.

*Mr. J. B. Poindexter,* Attorney General, and *Mr. J. H. Alvord,*
Assistant Attorney General, for Appellant, submitted a brief;
*Mr. Alvord* argued the cause orally.

The business of furnishing water to the inhabitants of a city
is a business charged with a public interest.

We deem it unnecessary to do more than to enumerate the
various tests by which the courts have determined whether or
not a particular business is a public utility.   They are: 1. That the
business in question is essentially a legal monopoly (*Allnutt* v. *In-
glis,* 12 East, 527; 104 Eng. Reprint, 206).   2. Exercise of the right
of eminent domain by the person or corporation carrying on the
business.   Private property shall not be taken or damaged for pub-
lic use without just compensation having been first made to, or paid
into court for, the owner.   (Section 14, Article III, of the Con-
stitution.)   3. The use of the public highways for the laying of
mains by the corporation or individual furnishing the service;
the bestowal of a special privilege or franchise raises an obliga-
tion to serve the public.   (*Cincinnati, H. & D. Co.* v. *Village of
Bowling Green,* 57 Ohio St. 336, 41 L. R. A. 422, 49 N. E. 121.)
4. In case of cities and towns, an exercise of the delegated right
of taxation for the purpose of obtaining public utility plants.
Taxes shall be levied and collected by general laws and for pub-
lic purposes only.   (Section 11, Article XII, Constitution.)   All

of the above enumerated privileges come from the state directly. Without legislative authority no person or corporation is entitled to use them.

A city furnishing water is a public utility within the definition above quoted. (*Brumm's Appeal,* 12 Atl. 855; *Nourse* v. *City of Los Angeles,* 25 Cal. App. 384, 143 Pac. 801.) All of the cases, whether they so state directly or not, proceed upon the theory that the municipality in holding property of this nature has the *status* of a legal individual, and its political nature does not enter into the question. (*Lloyd* v. *Mayor etc. of New York,* 5 N. Y. 369, 55 Am. Dec. 347.) In view of the language of this court in *Milligan* v. *Miles City,* 153 Pac. 276, and of the numerous courts which have passed upon this question, a city in its ownership of property devoted to a public use does so as a legal individual subject to all the rights and liabilities to which any other person or corporation owning property of a like nature is.

Public utilities or businesses charged with a public interest are subject to control by the state under its police power. (*Munn* v. *Illinois,* 94 U. S. 113, 126, 24 L. Ed. 77; *City of Madison* v. *Madison Gas & Electric Co.,* 129 Wis. 249, 116 Am. St. Rep. 944, 9 Ann. Cas. 819, 8 L. R. A. (n. s.) 529, 108 N. W. 65.) And the cases universally hold that water companies come within this rule. (*Spring Valley Waterworks* v. *Schottler,* 110 U. S. 347, 28 L. Ed. 173, 4 Sup. Ct. Rep. 48.)

The cases supporting this doctrine and showing that waterworks are subject to public control are collected in a case note in 61 L. R. A. 100. (See, also, *Danville Water Co.* v. *Danville,* 180 U. S. 619, 45 L. Ed. 696, 21 Sup. Ct. Rep. 505.) It is equally well established that whenever there is any doubt as to the reservation of the power in the state, it must always be resolved in favor of the public. (*Freeport Water Co.* v. *Freeport,* 180 U. S. 587, 45 L. Ed. 679, 21 Sup. Ct. Rep. 493; *Stone* v. *Yazoo & M. R. Ry. Co.,* 62 Miss. 607, 52 Am. Rep. 193; *Georgia Ry. & Bk. Co.* v. *Smith,* 128 U. S. 174, 32 L. Ed. 377, 9 Sup. Ct. Rep. 47; *City of Benwood* v. *Public Service Commission,* 75 W. Va. 127, 83 S. E. 295.)

·· We contend that the language of section 6, Article XIII, of the Constitution .does not abrogate the power of the state to control the city in the use of its property.    Exemption from such control can be assumed only from clear and express grant, never by implication.    The state must not be held to have granted away or abrogated its police power, if there is any other reasonable construction to be put upon the language.    (See cases last above cited.)

Neither do the provisions of section 36 of Article V apply to a property held by a city in its capacity as a private corporation. Its protection from legislative interference as to such property rests in the constitutional guaranties found elsewhere in the Constitution.    Hence control by the public service commission of the service and rates rendered by the city in operating a water plant is not a supervision or interference with municipal improvements, moneys, property, effects or the performance of a municipal function, within the prohibition of that section.

The provisions of Chapter 52 of the Laws of 1913 do not involve an exercise of the taxing power of the state for municipal purposes, contrary to section 36 of Article V, or section 4 of Article XIII, of the Constitution.    (*Wagner* v. *Rock Island,* 146 Ill. 139, 21 L. R. A. 519, 34 N. E. 545; *Chicago* v. *Northwestern Mut. Life Ins. Co.,* 218 Ill. 40, 1 L. R. A. (n. s.) 770, 75 N. E. 803; *Ukiah* v. *Ukiah Water & Imp. Co.,* 142 Cal. 173, 100 Am. St. Rep. 107, 64 L. R. A. 231, 77 Pac. 773.)

*Mr. Edward Horsky,* for Respondents, submitted a brief and argued the cause orally.

Chapter 52, Thirteenth Session Laws, is in direct conflict with section 6 of Article XIII of the Constitution.    When the people in their Constitution said to subsequent legislatures: ''Where a city extends its debt limit over the three per cent limit, it shall own and control, and devote the revenue derived therefrom to the payment of the debt,'' not only was city ownership and control made mandatory, but a limitation was imposed upon the legislature itself from directly, or in-

directly, interfering with such ownership and control; and any other agency than the city itself was excluded from exercising acts of control or ownership.

Local self-government: "The legislative Act authorizing the district court to appoint trustees of waterworks in cities of the first class is invalid as taking from the city the right of local self-government." (*State* v. *Barker*, 116 Iowa, 96, 93 Am. St. Rep. 222, 57 L. R. A. 244, 89 N. W. 204; Dillon on Municipal Corporations, sec. 58.)   The same rule prevails in Indiana, where a statute providing for the appointment of fire commissioners by the legislature was held unconstitutional as depriving the people affected by it of the right of local self-government. (*State* v. *Denny*, 118 Ind. 449, 4 L. R. A. 65, 21 N. E. 274; *People ex rel. Board* v. *Common Council*, 28 Mich. 228, 15 Am. Rep. 202; *Rathbone* v. *Wirth*, 6 App. Div. 277, 40 N. Y. Supp. 535.)   Counsel endeavor to circumvent local self-government by claiming that it is applicable to only "municipal functions," and make reference to the familiar rules that a city has two classes of powers, namely, public or governmental and private business functions; citing *Bailey* v. *Mayor*, 3 Hill (N. Y.), 531, 538, 38 Am. Dec. 669; *Milligan* v. *Miles City*, 51 Mont. 374, 153 Pac. 276.   It is interesting to note that the case of *Bailey* v. *Mayor*, involves a water plant, and was cited in *Helena Consolidated Water Co.* v. *Steele*, 20 Mont. 1, 37 L. R. A. 412, 49 Pac. 382; while among other cases cited in the Milligan decision is that of *Helena Consolidated Water Co.* v. *Steele*, 20 Mont. 1, 37 L. R. A. 412, 49 Pac. 382, which expressly decided that a municipally owned water plant, as in the case at bar, is a matter of purely business or private concern.   Later the case of *State ex rel. Gerry* v. *Edwards*, 42 Mont. 135, Ann. Cas. 1912A, 1063, 32 L. R. A: (n. s.) 1078, 111 Pac. 734, held likewise.   So that in both the *Steele* and *Gerry Cases*, a city water plant and city parks were held solely matters of private concern and local in nature, as distinguished from those public or governmental in nature.   (See, also, *Porter* v. *Shields*, 200 Pa. 241, 49 Atl. 785.)

Police power: Though the police power is inherent in the

state, the exercise of such power in the enactment of laws is, nevertheless, subject to certain limitations, to-wit: Such laws shall not be repugnant to the provisions of the state Constitution itself, nor to the federal constitution and laws made under its powers. (8 Cyc. 865; Cooley on Constitutional Limitations, 574; *People* v. *Gillson,* 109 N. Y. 389, 400, 4 Am. St. Rep. 465, 17 N. E. 343; *State* v. *Moore,* 104 N. C. 714, 17 Am. St. Rep. 696, 10 S. E. 143, 145; *Martin* v. *Hunter's Lessees,* 1 Wheat. (U. S.) 304, 326, 4 L. Ed. 97; *State* v. *Moore,* 104 N. C. 714, 17 Am. St. Rep. 696, 10 S. E. 143; *State* v. *Dalton,* 22 R. I. 77, 84 Am. St. Rep. 818, 48 L. R. A. 775, 46 Atl. 234, 235.)

Compulsory obligations and new liabilities: The law is also unconstitutional because it imposes compulsory obligation, and imposes new liabilities in respect to transactions or considerations already passed. (*Helena Consolidated Water Co.* v. *Steele,* 20 Mont. 1, 37 L. R. A. 412, 49 Pac. 382; Constitution, Art. XII, sec. 4; Art. XV, sec. 13.) The expense to be incurred must be met either by taxation or taking it out of the revenues of the plant. The power to tax or to impose a compulsory obligation upon a municipality involving a taxation is the exercise of legislative authority, which can only be delegated to the corporate authorities, that is, to the city council. (*Helena Consolidated Water Co.* v. *Steele,* 20 Mont. 1, 37 L. R. A. 412, 49 Pac. 382; *State ex rel. Gerry* v. *Edwards, supra.*) The Public Service Commission of Montana is not one of the corporate authorities of the city of Helena. "By the term 'corporate authorities' is meant those who constitute the legislative branch of the city government, the mayor and city council." (*State ex rel. Gerry* v. *Edwards, supra; Lovingston* v. *Wider,* 53 Ill. 302, 304; *People* v. *Mayor etc. of Chicago,* 51 Ill. 17, 30, 2 Am. Rep. 278; *People* v. *Knopf,* 171 Ill. 191, 49 N. E. 424, 426; *Harward* v. *St. Clair etc. Drainage Co.,* 51 Ill. 130, 133; *Wider* v. *City of East St. Louis,* 55 Ill. 133.) "The power cannot be delegated to a private individual or private corporation nor to officers of the corporation as such." (23 Cyc. 1660 (17), citing: *Harward* v. *St. Clair etc. Drainage Co.,* 51 Ill. 130; *People* v. *Mayor etc. of*

*Chicago,* 51 Ill. 17, 2 Am. Rep. 278; *East St. Louis* v. *Zebley,* 110 U. S. 321, 324, 28 L. Ed. 162, 4 Sup. Ct. Rep. 21; *Donahoe* v. *Kansas City,* 136 Mo. 657, 38 S. W. 571; *State* v. *Denny,* 118 Ind. 382, 4 L. R. A. 79, 21 N. E. .252; *Blades* v. *Board of Water Commissioners,* 122 Mich. 366, 81 N. W. 271, 272.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

By Chapter 52, Laws of 1913, a Public Service Commission for this state was created and its powers and duties defined. The city of Helena declined to submit to the supervision of the commission over its water system, and this controversy found its way into court, where it was decided in favor of the city and its executive officers. The commission has appealed.

1. Section 6, Article XIII, of our state Constitution, limits the indebtedness which a city may contract to three per cent of the value of the taxable property therein, but provides that the legislature may authorize an increase over that limit "when such increase is necessary to construct a sewerage system or to procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt." By subdivision 64, section 3259, Revised Codes, the legislature made available this extraordinary privilege, and the city of Helena, already indebted to the full extent of the three per cent limit, issued its bonds to the amount of $400,000, and from the proceeds purchased its [1] present water system. In the ownership and control of that water system, the city acts in its proprietary character, as distinguished from its governmental capacity. (*Helena Consolidated Water Co.* v. *Steele,* 20 Mont. 1, 37 L. R. A. 412, 49 Pac. 382.) If the city had acquired this water plant without [2] resort to the extended limit of indebtedness, there is not any question that it would then have stood upon an equal footing with an individual or private corporation engaged in furnishing water to a municipality and its inhabitants (*Milligan* v. *Miles City,* 51 Mont. 374, 153 Pac. 276), and would have been

subject to all reasonable regulation and control by the state, acting in virtue of its police power.   (*Munn* v. *Illinois*, 94 U. S. 113, 24 L. Ed. 77; *Spring Valley W. W.* v. *Schottler*, 110 U. S. 347, 28 L. Ed. 173, 4 Sup. Ct. Rep. 48.)

But the city contends that, having acquired its water supply by extending its indebtedness beyond the three per cent limit [3, 4] as authorized by the Constitution and statutes, it occupies a more favorable position than the prudent and provident city which purchases its water plant and keeps within the three per cent limit, in that it is enjoined by the language of the concluding sentence of section 6, Article XIII, above, to own and control such water supply; and, since this language of the Constitution is mandatory and prohibitory, it must be held to mean exclusive ownership and exclusive control, and therefore the city could not, if it would, admit of any interference with its water supply by anyone else; and, if Chapter 52 assumes to clothe the Public Service Commission with authority to supervise or control the management of such water supply thus acquired, it runs counter to the provision of the Constitution above, and must be held to be invalid.

A determination of the proper construction to be given to the language of section 6, Article XIII, quoted above, will lead to the solution of this controversy.   It must be conceded that there is some distinction made in the Constitution between the city owned water supply purchased by extending the municipal indebtedness beyond the three per cent limit, and the city owned water supply acquired without exceeding that normal limit. The Constitution concerns itself with the first as it does not with the second.   The city able to procure a water plant and keep within the three per cent limit is free to proceed without danger of collision with any provision of the Constitution.   It is only when a city already burdened with an indebtedness equal to three per cent of the value of the taxable property therein seeks the privilege of increasing that burden that the Constitution interposes with the declaration that such additional indebtedness may be authorized by the legislature, and a favorable vote of

the taxpayers affected, "when such increase is necessary to construct a sewerage system or to procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt." Does this reference to ownership, control and application of revenue constitute a special grant of power to the city, or is it a limitation upon the authority of the city so unfortunately situated? Was it the purpose of the framers of the Constitution thus to specially favor such city, or was it the purpose to authorize the extension of indebtedness above the normal limit only on condition that ample provision be made for the discharge of such extraordinary burden; in other words, is the reference to ownership, control and application of revenue to be understood as expressing constitutional restrictions imposed as a condition to the exercise of the privilege implied in the provision for extended indebtedness?

Other things equal, a court should not hesitate to pronounce this concluding sentence of section 6, Article XIII, a limitation of power rather than a grant; for our state Constitution was intended to express the limitations which the people set upon the various agencies of government—even upon themselves. All political power is vested in and derived from the people, and therefore we should not expect to find in the Constitution any grant of power from the people to themselves, either directly or through any governmental agency. Though some provisions assume the form of grants, in reality they but delimit the power or authority to which they refer. Every reference in the Constitution to public indebtedness is coupled with a limitation upon the power to incur indebtedness. The elaborate provisions for the security of the people of the state, and of every political subdivision, against their own possible improvidence constitute one of the distinguishing features of our fundamental law. Since it is the rule that the Constitution limits, rather than grants, power, any provision open to construction should be held to be within that general rule, unless a contrary conclusion is forced by the circumstances of the particular case.

Another consideration leads to the same end. In the people of this state is lodged its police power, one of the highest attributes of sovereignty. The exercise of this power is deemed essential to the good order and general welfare of organized society, and so jealous are the people in their retention of the power that, though no specific provision of the Constitution forbids it, the [5] legislature is without the authority to surrender it altogether. (*Helena L. & R. Co.* v. *City of Helena,* 47 Mont. 18, 130 Pac. 446; *Northern Pac. Ry. Co.* v. *Minnesota,* 208 U. S. 583, 52 L. Ed. 630, 28 Sup. Ct. Rep. 341.) We do not say that the people of the state cannot by constitutional provision divest themselves of the right to exercise the power with respect to any particular subject, but we do say that for them to do so would be contrary to the policy pursued in every civilized nation. While the state may employ agencies through which to exercise the power, its absolute abdication to any such agency—the clothing of the agency with the exercise of the power to the exclusion of the state itself—is all but unheard of in our jurisprudence.

However positive the terms of the grant of police power to [6] the municipality, for instance, the state will be held to have retained its original jurisdiction over the same subject and to possess the authority to exercise it concurrently with the municipality. (*Seibold* v. *People,* 86 Ill. 33; *Spring Valley* v. *Spring Valley Coal Co.,* 71 Ill. App. 432.) Speaking upon one phase of this subject, the supreme court of the United States said: "This power of regulation is a power of government, continuing in its nature, and, if it can be bargained away at all, it can only be by words of positive grant, or something which is in law equivalent. If there is reasonable doubt, it must be resolved in favor of the * * * power. In the words of Chief Justice Marshall in *Providence* v. *Billings,* 4 Pet. (U. S.) 514, at page 561 (7 L. Ed. 939): 'Its abandonment ought not to be presumed in a case in which the deliberate purpose of the state to abandon it does not appear.' This rule is elementary, and the cases in our reports where it has been considered and applied

are numerous." (*Railroad Commission Cases,* 116 U. S. 307, 29 L. Ed. 631, 636, 6 Sup. Ct. Rep. 334, 388, 1191.)

If the language of the concluding sentence of section 6, Article XIII, above, should be held to secure to the city of Helena the control of its water system to the exclusion of everyone else, the state included, it follows as of course that the state has surrendered to the city all police power with reference to such system, and that, if it should transpire that the water supply became contaminated, spreading contagious disease generally, the state would be helpless and could not interfere. We decline to adopt such a construction, since, as we view it, the language of the constitutional provision does not lead to that conclusion.

When we consider that the privilege of extended indebtedness is open only to the city whose business management has resulted in a burden of debts, it would seem fair to presume that, instead of admitting such city to the extraordinary freedom of action for which respondents contend, it was the intention of the framers of section 6, above, to hedge about such city with restrictions conducive to the security of the additional indebtedness and its ultimate discharge. It certainly cannot be said that the injunction of section 6, above, that the revenues derived from such water system shall be devoted to the payment of the extended indebtedness, secures to the city any special privilege. On the contrary, that language is not susceptible of any meaning other than that the city is prohibited from dissipating the funds derived from the operation of its water system or using them for general municipal purposes, and is commanded to devote them to the single purpose indicated. It is strictly a limitation imposed in the interest of the city and the holders of its securities. But this injunction is employed in the same connection as the direction to the city to own and control such water system, and in our opinion this reference to ownership and control is likewise but an inhibition upon the city in the interest of its credit, and not a limitation upon the power of the legislature to direct the exercise of the state's police power. It is not necessary to determine whether a city operating without the dis-

ability imposed by this extended indebtedness could sell its water plant or let its operation to an individual or private corporation; but, in its own interest and the interest of its bondholders, the city laboring under such disability is forbidden to part with title to its water plant and thus possibly lessen the security behind the bonds, and it is likewise prohibited from parting with control and thus sharing the profits of operation with anyone, so long as the disability remains. The entire plant is set apart for and devoted to the ultimate discharge of the extraordinary indebtedness.

To follow the argument advanced in behalf of respondents to its logical conclusion: The city of Helena is in the specially favored class only because it was compelled to resort to the extended indebtedness to procure its water supply. As respects that water supply, it will always remain in that class. There is no provision for removing it, even though it discharges its extraordinary indebtedness and reduces its original obligations well below the three per cent limit, and is otherwise in the same situation as the city that owns its water plant but never exceeded the normal limit. What is to become of the revenue from the plant after the city discharges the indebtedness, if the strict construction of the concluding sentence of section 6 is to be applied as counsel for respondents contend? Our construction of that language seems to us reasonable. It is in harmony with the general character of the Constitution as a whole, and it avoids the all but absurd assumption that the state intended to surrender its police power under circumstances where the necessity for its retention would be augmented rather than lessened.

2. Chapter 52 above does not infringe the provisions of section 36, Article V, of the Constitution. The Public Service Commission is not a special commission, within the meaning of those terms as employed in section 36 above. In many of the states of this country, the theory of local self-government for municipalities does not prevail, but, on the contrary, the power of the legislature to appoint or control municipal officers is asserted. (28 Cyc. 295.) For instance, by an Act approved

March 12, 1861, the legislature of Minnesota provided for an extension of Fort Street, St. Paul, and in section 2 of the Act named Nathaniel McLean, J. W. Selby and Parker Paine commissioners to carry out the requirements of the Act. (Laws of Minnesota, 1861, p. 255; *Daley* v. *City of St. Paul,* 7 Minn. 390 (Gil. 311).) By an Act approved November 25, 1885, the legislature of Oregon amended the Act incorporating Portland. By section 142 of the amended Act, the city was authorized to procure a water supply for itself and its inhabitants. By section 143, John Gates, F. C. Smith, C. H. Lewis, Henry Failing, W. S. Ladd, Frank Dekum, L. Fleischner, H. W. Corbett, W. K. Smith, J. Lowenberg, S. G. Reed, R. B. Knapp, L. Therkelson, Thomas M. Richardson and A. H. Johnson were named as a "water committee" with power to purchase or construct the water plant and to that end to issue bonds of the city, *etc.* (Laws of Oregon (Sp. Sess.) 1885, p. 97; *David* v. *Portland Water Committee,* 14 Or. 98, 12 Pac. 174.) Many other examples might be cited, but these suffice to indicate the character of legislation against which the provision in section 36, Article V, above was directed. (*People* v. *Hoge,* 55 Cal. 612; *In re Pfahler,* 150 Cal. 71, 11 Ann. Cas. 911, 11 L. R. A. (n. s.) 1092, 88 Pac. 270.)

3. Neither does this Act conflict with section 4, Article XII. [8] It does not levy any tax upon the city of Helena or its inhabitants. Even the regulation of water rentals would not amount to a levy of taxes, for a water rental is not a tax. (*Wagner* v. *City of Rock Island,* 146 Ill. 139, 21 L. R. A. 519, 34 N. E. 545.) Whether a particular regulation of the Public Service Commission may have the effect of imposing a compulsory obligation on the city is another question. Any regulation [9] which the commission makes must be reasonable in order to be valid, and any regulation which imposes upon the city any obligation which is invalid is not reasonable. Whether the regulation sought to be imposed upon the city of Helena, with reference to the character of the accounts to be kept with respect to its water system, is reasonable depends upon considera-

tions not presented by this record. Assuming it to be reasonable, it does not follow that it will impose upon the city of Helena any obligation whatever.

The "revenues" from the water plant referred to in section [10] 6, Article XIII, above, which are to be held inviolate— dedicated to the discharge of the extraordinary indebtedness— are the net revenues or the gross receipts less *necessary* operating expenses, and, if this regulation of the commission is a reasonable one, the extra expense incurred in carrying it into effect is a proper and necessary charge against the gross revenues derived from the water system, and not an obligation imposed upon the city at all.

Rather than declare a solemn enactment of the legislature invalid, we will construe its provisions in harmony with the Constitution if possible to do so. The principle of local self-government as declared by this court in *Helena Con. W. Co.* v. [11] *Steele,* above, and in later cases, does not exclude the state from the exercise of police powers within a city of this state.

The language of Chapter 52 above, conferring authority upon the Public Service Commission, is to be construed in harmony with the theory of self-government in the city and the retention of police power by the state.

At first blush, the concluding sentence of section 3 of Chapter 52, to-wit, "And the Public Service Commission is hereby in- [12] vested with full power of supervision, regulation and control of such utilities, subject to the provisions of this Act and to the exclusion of the jurisdiction, regulation and control of such utilities by any municipality, town or village," might seem to contemplate the complete substitution of the Public Service Commission for the city in the management and control of its water system; but a consideration of the entire Act leads us to the conclusion that it was the intention of the legislature to go no further than to provide that, within the limited sphere of its jurisdiction, the Public Service Commission may make reasonable regulations which the city must heed, and to that extent

only is the authority of the city superseded, but that it was ever intended to take from the city the active management of its water plant or the authority to appoint the proper officers and employees to operate it, or to interfere with such officers in the proper discharge of their duties, we cannot admit.

From necessity we are compelled to pass upon the general character of the legislation found in Chapter 52 above, rather than upon the particular provisions of the Act. Whether the legislature exceeded its authority in attempting to confer upon the Public Service Commission any other particular power can only be determined when the exercise of that power is called in question directly. So far as the objections now urged against it are concerned, Chapter 52 appears to be a valid legislative enactment.

The judgment is reversed and the cause is remanded for further proceedings not in conflict with the views herein expressed.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.