WARBURTON-BEACHAM SUPPLY CO. *v*. CITY OF JACKSON.*

(Division A.  Oct. 29, 1928.  Suggestion of Error Overruled

Nov. 12, 1928.)

[118 So. 606.  No. 27271.]

504

*Corpus Juris-Cyc References: Business 9CJ, p. 1103, n. 33; Licenses, 37CJ, section 75, p. 220, n. 5; section 76, p. 222, n. 31; section 77, p. 222, n. 39; Plumber, 31Cyc, p. 890, n. 13; Statutes, 36Cyc, p. 114, n. 96; Tradesman, 38Cyc, p. 918, n. 12.

*Howie, Howie & Latham,* for appellant.

*Morse & Bryan,* for appellee.

*Howie, Howie & Latham,* for appellant, in response to request of court.

*Morse & Bryan,* for appellee, in response to request of court.

Smith, C. J. The appellant recovered before a justice of the peace, and in the county court, to which the case was appealed, a judgment against the appellee for privilege taxes alleged to have been unlawfully collected from it by the appellee, and paid by it under protest. The circuit court, on an appeal of the case thereto, reversed the judgment of the county court and remanded the case to it. The county court then rendered a judgment that the plaintiff take nothing by its suit, from which an appeal was again taken to the circuit court, where the judgment of the county court was affirmed, from which judgment the appellants have brought the case to this court.

It appears from the written statement of the appellant's claim, and the evidence in support and denial thereof, that the Warburton-Beacham Supply Company is a corporation engaged in the plumbing business in the city of Jackson. It maintains a warehouse, in which it keeps a large stock of plumbing materials and fixtures. It also maintains an office, in connection with which is a room where it displays samples of the materials and plumbing fixtures carried by it in stock. The materials and fixtures used by it in fulfilling its plumbing contracts are taken from the stock thereof carried by it; but it sells from this stock plumbing materials and fixtures to any person applying therefor, irrespective of whether or not they are used in connection with contracts for plumbing entered into by it; in other words, such sales are to the public generally. Such sales constitute about twenty per cent. of the appellant's business.

Persons engaged in the plumbing business have been accustomed, for more than twenty years, to carry plumbing materials in stock for use by themselves in executing their plumbing contracts, and for sale to the public generally.

Section 3854, Code of 1906, imposes a privilege tax on "each individual, firm or corporation doing a plumbing business in cities or towns . . . where they have waterworks and sewerage." In 1920 this statute was amended by omitting the words "where they have waterworks and sewerage," and was made to read "on each individual, firm, or corporation doing a plumbing, steam fitting or gas fitting business in cities." Section 43, chapter 104, Laws of 1920; section 7730, Hemingway's 1927 Code.

Section 3872, Code of 1906 (section 7756, Hemingway's 1927 Code), imposes a privilege tax on each store. Section 3909, Code of 1906 (Hemingway's 1927 Code, section 7808), permits municipalities to impose a privilege tax not exceeding fifty per centum of that imposed by the state.

The record does not disclose any ordinance adopted by the appellee imposing privilege taxes, but the agreed statement of facts assumes that such an ordinance exists imposing a privilege tax on stores and on the plumbing business in accordance with the statute. Section 239, chapter 118, Laws of 1926 (Hemingway's 1927 Code, section 7813), provides that:

"Any person, firm or corporation pursuing more than one of the businesses herein taxed shall pay the privilege tax on each separate business so conducted or pursued," etc.

Prior to 1926, the appellant paid the appellee the tax imposed on persons engaged in the plumbing business, but paid no tax on a store. In January, 1927, the appellee collected from the appellant, over its protest, a privilege tax on a store for the year 1926, damages for not having paid the tax when due, and a privilege tax on a store for

the year 1927, and this suit is by the appellant to recover the money so paid.

The appellant's contention is that the plumbing business includes the selling of plumbing materials to the public generally. What we are called on, then, to do, is to define the words "plumbing business" as used in the statute and ordinance.

According to Webster's International Dictionary, a plumber is "a tradesman who furnishes, fits, and repairs gas, water, and soil pipes, cisterns, tanks, baths, water closets, and their fittings, and other sanitary and fire protection apparatus for a house or other buildings, including junctions in mains and sewers." According to the same lexicographer, "a mechanic or artificer, especially one whose livelihood depends upon manual labor," is a tradesman; plumbing is "a plumber's occupation or trade," and the word "business" includes "any particular occupation or employment habitually engaged in, especially for livelihood or gain."

In *Wilby* v. *State*, 93 Miss. 767, 47 So. 465, 23 L. R. A. (N. S.) 677, this court was called on to decide whether a plumber who executed his plumbing contracts by his own labor was engaged in the plumbing business, and it was there said that such a plumber was not engaged in the plumbing business within the meaning of the statute. The plumbing business was there defined as the "taking contracts and making profit by the employment of the labor of others to complete" contracts for plumbing, which definition was approved in *City of Vicksburg* v. *Mullane*, 106 Miss. 199, 63 So. 412, 50 L. R. A. (N. S.) 421, wherein it was assumed that a person engaged in the plumbing business under his license therefor might have a bureau for the purpose of obtaining, and a place at which to keep materials for use in carrying out, plumbing contracts. The addition to the statute in 1920 of the words "steam fitting and gas fitting," is not without value here. A gas fitter is "a workman who installs gas pipes

and fixtures," and a steam fitter is "a workman who installs or repairs steam pipes, their fittings," etc. These words evidence the legislative interpretation of the statute as applying primarily to manual labor, and not to buying and selling, and were added to the statute, probably, for the reason that "the trade of gas fitting (and of steam fitting) has, in many parts, become separate from that of a plumber." Webster's International Dictionary. (Parenthesis ours.)

One engaged in the plumbing business, then, in the contemplation of the statute, is one who executes plumbing contracts in whole or in part by the labor of others, and, as an incident thereto, he may keep a stock of plumbing materials to be used by him in executing his plumbing contracts. If, from his stock of plumbing materials he sells to the public generally, he is engaged in keeping a store which is defined in *Folkes* v. *State*, 63 Miss. 81, as "any place where goods are deposited and sold by one engaged in buying and selling [them]." One who keeps a store, the stock of which consists of general merchandise, including plumbing fixtures, and who also takes contracts for plumbing, using material therefor from his stock of goods, would be engaged both in keeping a store and in the plumbing business, and there is no difference in principle from that supposed case and the one at bar.

The case of *Planters' Lumber Co.* v. *Wells,* 147 Miss. 279, 112 So. 9, relied on by the appellant, may be easily distinguished from the one here under consideration. Section 3837, Code of 1906 (section 7695, Hemingway's 1927 Code), imposes a privilege tax on each lumber yard, graduated according to the number of feet of lumber sold. The Planters' Lumber Company was engaged in running a lumber yard and carried in stock, in addition to lumber, other building material, selling both lumber and such other building material. Seventy-five per cent. of its annual sales consisted of lumber, and twenty-five per cent. of other building material. It paid the privilege

tax imposed on lumber yards, and was sued by the sheriff and tax collector for the tax imposed by the statute for keeping a store. A lumber yard, according to the lexicographers, is a yard where a stock of lumber is offered for sale, but according to the agreed statement of facts on which the case was tried, the owners of lumber yards were accustomed, prior to the adoption of the statute, to keep and sell both lumber and other building material, and that a business so conducted was commonly known as a lumber yard. The court held that the statute was adopted by the legislature in the light of this custom and the common understanding, and, therefore, that the words "lumber yard" therein must be held to mean a yard where a stock of lumber and other building materials are kept and offered for sale. The tax there in question was on an occupation which consists of buying and selling. The tax is on an occupation in which manual labor is its principal and necessary ingredient, buying and selling being merely incidental thereto. The statute here, but not there, indicates on its face that the words describing the business taxed were used by the legislature in their usual and ordinary sense, and, when such is the case, they must be given their usual and ordinary meaning, unless it appears from long-settled legislative custom that they were intended to mean something different. 36 Cyc. 1114; *Green* v. *Weller*, 32 Miss. 650; *Koch & Dryfus* v. *Bridges*, 45 Miss. 247; *Yerger* v. *State*, 91 Miss. 802, 45 So. 849; *State* v. *Baggett*, 145 Miss. 142, 110 So. 240.

*Affirmed.*