[No. 25322. Department One. March 19, 1935.]

THE CITY OF SPOKANE, *Respondent,* v. WARREN LATHAM, *Appellant.*[1]

*E. A. Cornelius,* for appellant.

*G. M. Ferris* and *Arthur L. Hooper,* for respondent.

[1]Reported in 42 P. (2d) 427.

MAIN, J.—The defendant was charged with the violation of the plumbing ordinance of the city of Spokane. The trial in the superior court was to the court without a jury, a jury having been waived, and resulted in a judgment finding the defendant guilty as charged, and fining him in the sum of one dollar. From this judgment, the defendant appeals.

The only question presented upon the appeal is whether § 43 of the plumbing ordinance mentioned is a valid enactment by the city council. That section provides: ·

"Where the Durham system is used for soil or waste pipe, it shall be necessary to use special recessed drainage fittings, and all pipe in system must be galvanized iron or brass and of standard iron pipe size. Said system will not be permitted in buildings of less than three (3) stories in height. All pipe to be well reamed."

It will be observed that, by this section of the ordinance, what is called the Durham system of plumbing is permitted in all buildings of three stories or more in height, and prohibited in all buildings of less than three stories.

An ordinance covering the material of pipe, the size thereof to be used in plumbing, for the licensing of plumbers, and the inspection of the plumbing installed, is a valid exercise of the police power. *New Castle v. Withers*, 291 Pa. 216, 139 Atl. 860, 57 A. L. R. 132; *Kleinhein v. Bentley*, 98 Kan. 431, 157 Pac. 1190; *Tacoma v. Fox*, 158 Wash. 325, 290 Pac. 1010. The reason such ordinances are sustained is because they bear a direct and substantial relation to the public health or the public welfare.

In the case now before us, there is no question of public health involved. The plumbing inspector of the city of Spokane, called as a witness by the city, testified:

"Q. Now, Mr. Flickenger, then you still say that so far as the health of the people are concerned and the sanitary conditions, that the Durham System of plumbing is just as good in a one-story building as it is in a ten-story building? A. I do. . . . Q. As a matter of fact the objection to the Durham, is largely on the part of the lead manufacturers and the plumbers who have learned to wipe joints, and not on account of public health. A. You couldn't make a public health issue out of it. Q. Public health isn't an issue in it? A. I don't think it is. Either one must be properly installed in order to protect the health."

The question of the public health not being an issue, the only remaining question would be whether the prohibiting of the Durham system of plumbing in a building of less than three stories, while it is permitted in all buildings of three stories or over, bears any reasonable or substantial relation to the public welfare. If it does bear such relation, it is a valid enactment; otherwise, it is invalid. *Brown v. Seattle,* 150 Wash. 203, 272 Pac. 517; *Patton v. Bellingham,* 179 Wash. 566, 38 P. (2d) 364.

Whether the facts of a particular case warrant the assertion of police power, is a judicial question to be determined by the courts. *Bowes v. Aberdeen,* 58 Wash. 535, 109 Pac. 369, 30 L. R. A. (N. S.) 709. If a state of facts can reasonably be presumed to exist which would justify the ordinance, the court will presume that such facts did exist, and that the ordinance was passed for this reason. *State v. Pitney,* 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A 209.

Under the section of the ordinance here in question, the Durham system was prohibited in all buildings under three stories in height, whether dwelling houses or erected for business purposes. As to all buildings of three stories or more, that system, or what may be referred to as the lead system, was optional with the builder. Both systems were equally good, when prop-

erly installed. The ordinance provided that all persons doing plumbing work must be licensed, and that all work installed must be inspected by an officer or employee of the city.

Since no question of health is involved, the two systems being equally good when properly installed, and all persons doing plumbing work must be licensed and the work inspected, we can conceive of no facts which would justify the prohibiting of the Durham system in all buildings under three stories in height, while permitting it in all buildings above that height. The fact, if it be a fact, that more skilful mechanics are employed in the larger and more expensive business and office buildings, furnishes no basis for holding that the section of the ordinance in question bears any reasonable or substantial relation to the public welfare.

The case of *State v. Hutchinson Ice Cream Co.*, 168 Iowa 1, 147 N. W. 195, sustaining an act of the legislature as being within the police power fixing the standard of butter fat for ice cream, does not present the same question as is here involved, because, as there pointed out, it was not practicable, by ordinary inspection, for a purchaser to distinguish cheaper, low-grade ice cream from the better qualities.

Since the section of the ordinance here involved bears no reasonable relation to the public health or the public welfare, it cannot be sustained.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the proceeding.

MILLARD, C. J., TOLMAN, and BEALS, JJ., concur.

GERAGHTY, J. (dissenting)—This is city council business, rather than supreme court business. Building codes of cities concern themselves with innumerable matters of detail, and it will not do to single out or

subject to criticism one particular provision, detached from its place in the whole scheme. The preparation of a building code requires the exercise of judgment in the light of many circumstances known to the local legislative bodies, but not to the court.

All plumbing work was originally in lead, as the word "plumbing" itself implies. The ordinance is treated in the majority opinion as one making an initial exception in favor of all lead installation in one and two-story buildings; whereas, the ordinance of 1911 made an exception in favor of threaded iron pipe, permitting its optional use in buildings over two stories in height. Nothing but lead installation has ever been used in one and two-story buildings, the type of building embracing the mass of private residences.

As said in the majority opinion, if a state of facts can reasonably be presumed to exist which would justify the ordinance, the court will presume that such facts did exist, and that the ordinance was passed for this reason. Doubtless, several reasons could be assigned for the exclusive use of lead in the average residence building. For one thing, these buildings are generally of wood, and lead plumbing is much more flexible than the iron pipes. On the other hand, the higher buildings are made of brick, cement or stone, and may be considered more adapted to the use of a more rigid system of plumbing in which threaded iron pipes are used.

The majority say the question of public health is not involved. Setting aside the testimony in regard to the Durham system as more susceptible to stoppage, a consideration affecting health, the question of safety may also be involved. At any rate, it was for the city council to say.

I think the judgment of the trial court should be affirmed.