CLARENCE LEISCHNER AND MERLE JOHNS, PLAINTIFFS AND APPELLANTS, v. EARLE KNIGHT AND WILLIAM J. FRY, JR., MAYOR AND CLERK, RESPECTIVELY, OF THE CITY OF BILLINGS, ET AL., DEFENDANTS AND RESPONDENTS.

No. 9880.
Submitted January 15, 1959. Decided February 26, 1959.
Rehearing Denied April 16, 1959.
337 Pac. (2d) 359.

110

MR. JUSTICE ADAIR dissented in part and MR. JUSTICE BOTTOMLY dissented.

Mouat & Overfelt, Lee Overfelt, Billings, argued orally, for appellants.

James F. Battin, City Atty., Billings for respondent.

MR. JUSTICE CASTLES:

This suit was brought by appellants, plaintiffs below, as tax-payers and representatives of others similarly situated (plumb-

ing contractors in the City of Billings) to enjoin the respondents, defendants below, including the City of Billings as a municipal corporation and public utility, from doing certain work in connection with installing new water "services" for customers of the city water system. The district court received evidence, both oral and documentary, made findings of fact and conclusions of law favorable to the defendants, and refused the relief asked by the plaintiff. The findings are amply supported by the evidence, and the questions involved in this appeal are primarily legal rather than factual.

The record indicates that the City of Billings has for many years operated a water system providing service both in and out of the city limits. As a part of this system, water mains are maintained in the streets. To make the water available for use it is necessary to tap into the main and run pipe to the edge of the street and at that point install a shut-off valve accessible from the surface of the land.

The pipe, valve, curb box, etc., when installed are referred to as a "service." These "services" are located entirely within the public right of way. The shut-off valve is located at the consumer's property line and is the point at which the consumer attaches his own pipe to run the water on into his building.

Effective July 1, 1956, the city established a flat rate schedule for installing these "services" and took for itself the exclusive right to do this work. Prior to that date, independent plumbing contractors could sell the required pipe and parts to the consumer and perform the necessary installation work. Since the city commenced doing the work it has supplied the material and performed the work with its own employees who are not licensed plumbers.

As we view the case, two significant issues are raised. The first concerns the right and power of the city to make these installations and charge for doing so on a flat rate basis. Second, if the city has the right to make the installations, is it required to employ licensed plumbers to do the work?

It is well-settled law in this state that cities have only those ▮ powers granted them by statute or which are necessarily implied as adjuncts to powers granted by statute. This court has repeatedly stated that "unless a power is vested in the municipality by express law [or by necessary implication therefrom], the presumption is against the exercise by the city of any such power." State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 328, 100 Pac. (2d) 915, 921. This rule requires that we look to the statutes for the solutions to the problems raised by this case.

Cities and towns of this state are expressly granted power to secure supplies of water for use of their inhabitants by R. C. M. 1947, section 11-981, which provides:

"Securing water supply. The city or town council has power: To adopt, enter into, and carry out means for securing a supply of water for the use of a city or town or its inhabitants."

A city engaging in the water business is a public utility and subject to regulation by the Public Service Commission under the provisions of Title 70, Chapter I, R. C. M. 1947. Public Service Comm. v. City of Helena, 52 Mont. 527, 159 Pac. 24.

Any public utility including a city such as Billings is entitled to make a reasonable charge for service rendered in connection with its functions as such public utility under the provisions of R. C. M. 1947, section 70-105, reading as follows:

"Public utilities to furnish service for reasonable charges. Every public utility is required to furnish reasonably adequate service and facilities. The charge made by any public utility for any heat, light, power, water, telegraph, or telephone service, produced, transmitted, delivered, or furnished, or *for any service to be rendered as or in connection with any public utility,* shall be reasonable and just, and every unjust and unreasonable charge ,is prohibited and declared unlawful." Emphasis supplied.

By R. C. M. 1947, section 11-966, subd. (4), it is provided that "Cities and towns shall have jurisdiction and control over the territory occupied by their public works, and over and along

the line of reservoirs, streams, *trenches, pipes, drains, and other appurtenances used in the construction and operation of such works,* \* \* \* for the enforcement of its sanitary ordinances \* \* \*." Emphasis supplied.

These sections form the statutory basis upon which the right of the city to engage in the water business and make charges for the water and services provided is predicated. Section 11-981 is the basic grant of power; section 70-103 defines a city engaging in the water business under section 11-981 as a public utility; section 70-105 authorizes public utilities including cities to charge reasonable rates for both the product and the service in connection with its provision; and section 11-966 assures the city of control over its system.

All of these sections are written in very general terms and in truth they could hardly be written in any other way. Conditions vary over the state to such an extent that it would not be practical to attempt by specific legislation to spell out the methods to be used for procurement or maintenance of a water supply.

This court said in State v. Stark, 100 Mont. 365, 370, 52 Pac. (2d) 890, 892:

"Where a power is conferred upon a municipality and the mode is prescribed, such mode must be followed (State ex rel. Daly v. Dryburgh, 62 Mont. 36, 203 Pac. 508); but if no mode is prescribed, the power is to be exercised in such manner as municipal officials, in their discretion, shall determine upon. Fisher v. Stillwater County, 81 Mont. 31, 261 Pac. 607; Arnold v. Custer County, 83 Mont. 130, 269 P. 396; Lang v. City of Cavalier, 59 N. D. 75, 228 N. W. 819; Christensen v. Town of Kimballton, 212 Iowa 384, 233 N. W. 789, 236 N. W. 406, 407."

In Milligan v. City of Miles City, 51 Mont. 374, 153 Pac. 276, L. R. A. 1916 C, 395, this court held in effect that cities are to operate their affairs, when engaged in proprietary activities, in a businesslike manner.

To provide water for its inhabitants, the city must make some ▆ provision for tapping the main and installing the "services." The statutes are silent as to the mode by which this is to be accomplished and therefore the city has discretionary power to decide the matter. State v. Stark, supra, and cases cited therein.

Only two practical possibilities exist, either the city must undertake to build the "services" or the work must be done by private contractors. The defendant has elected to operate under the first alternative and unless it has abused its discretion in so doing its election is unobjectionable. The alternative suggested by the appellants is to let them and other contractors do the work and pay a fee to the city for tapping into the mains. But they suggest no reason why this would better accomplish the result required, provision of adequate "services," than the method the city is presently using.

By following its present procedure the city is assured firm ▆ control over the timing of street openings to minimize inconvenience to traffic, control over the methods and materials used, and it can be sure that the resurfacing of the street is done promptly and well.

It appears from the testimony in the record that the cast iron mains are subject to cracking and rupture if the tapping job is not done correctly and skillfully. Interruption of water service due to ruptures in the mains are of great concern to the city not only from the standpoint of the investment involved but also from the viewpoint of public convenience and fire protection. These are interests which the city may legitimately guard under its powers to provide for the general welfare of its inhabitants. R. C. M. 1947, section 11-901; State ex rel. Altop v. City of Billings, 79 Mont. 25, 32, 255 Pac. 11, 54 A. L. R. 1091.

The appellants object to the flat rate method of charging for "service" installation. These rates were established on the basis of average cost experience over a period of years and yield no over-all profit to the city. For the rate charged, the consumer gets a complete job from excavation to resurfacing the

street. The materials used are figured into the cost of the job and no separate charge is made for them.

The appellants suggest that the general water rates should be raised sufficiently to provide revenue for meeting the expense of "service" installations.

However, we think that charging the consumer for the "service" installed for his benefit is within the scope of section 70-105, R. C. M. 1947, and so long as the charge is reasonable and just the practice is unobjectionable.

Charging flat rates in Billings seems particularly fair since the city runs its mains on one side or the other of the street thus requiring a longer trench and pipe to reach some abutting property. However, each abutting owner pays an equalized share of the cost of the main and it would not be equitable to charge a water user more than his neighbor across the street to use the main for which he paid at the same rate. Whether or not the flat rate charged is reasonable and just may be a question for the Public Service Commission under its rate-making authority, but is not a part of this action.

We are next compelled to determine whether or not section 66-2401, R. C. M. 1947, requires that the men engaged in the installation of the "services" be licensed plumbers. That section reads:

"Plumbers in cities and towns of more than 1,000—license required. Any person working at the business of plumbing, in any incorporated city or town in this state containing more than one thousand inhabitants, either as a master plumber or as a journeyman plumber, shall first secure a state license as hereinafter provided."

There is no question but that the work involved in putting a service into operation includes cutting, fitting, and handling pipes and valves. We will not rule whether or not this is plumbing within the meaning of the statute because, plumbing or not, we do not think this statute contemplates the work done by cities in constructing, maintaining, and operating their water systems.

116

Statutes such as the plumber's license provisions of Chapter 24, Title 66, R. C. M. 1947, are police regulations established in the interest of public health and welfare. See Board of Examiners of Plumbers of City of Phoenix v. Marchese, 49 Ariz. 350, 66 Pac. (2d) 1035; City of Spokane v. Latham, 181 Wash. 161, 42 Pac. (2d) 427; In re Nicholls, 74 Cal. App. 504, 241 Pac. 399, and see also State v. Stark, 100 Mont. 365, 52 Pac. (2d) 890. Police regulations are valid only so far as they bear a "reasonable relation to the public health or safety." Pike v. Porter, 126 Mont. 482, 253 Pac. (2d) 1055, 1056.

The provisions for licensing plumbers after they have passed an examination are designed to prevent injury to the public and to individual householders from escaping water and sewage from faulty piping. But requiring licensed plumbers to install "services" would not provide the public any more protection than it has when the city itself is doing the work through employees hired and trained for the job. Since application of the statute here would not tend to promote public health and welfare, it would be an unnecessary and invalid restriction on an otherwise legitimate undertaking by the city. Protection of the public is provided by city ordinance, state law, and rules and regulations of the Public Service Commission.

If we were to rule to the contrary we would raise more problems than we would solve. Endless litigation could ensue from claims that licensed plumbers are required for every job involving pipe in city water systems. The principle might even carry over to gas pipe, electrical and telephone wires in the distribution systems of power, light, and telephone utilities, public and private. We therefore hold that section 66-2401, R. C. M. 1947, does not require the city to hire only licensed plumbers to install water "services" for its customers.

The dissenting opinion suggests that we are granting an exclusive right to cities and towns to go into the business of plumbing or other business in competition with free enterprise. Such is not the case. The record in the instant case is confined to

the City's water system on its own right-of-way under the statutes of the state and rules and regulations of the Public Service Commission. It does not reveal any warehousing, furnishing and selling plumbing supplies and installation of same except as stated, and confined to its own system.

Also, we have not gone beyond the public utility field which is regulated by statute, franchise, and rules and regulations so that the suggestion that we are opening up the hiring of unlicensed persons in any field is unwarranted.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. JUSTICE ANGSTMAN, and THE HONORABLE C. B. ELWELL, District Judge, concur.

MR. JUSTICE ADAIR: (concurring).

I concur in the affirmance of the judgment but not in all that is said in the foregoing opinion.

MR. JUSTICE BOTTOMLY, ACTING CHIEF JUSTICE (dissenting).

I dissent to the majority opinion for the following reasons:

As I view the facts and circumstances in this case, the first question considered by the majority opinion is not the real and actual question presented by the pleadings herein. A city or town has the powers only, that have been expressly granted to them by the law, or which are necessarily implied to make workable the powers so granted.

There is no question but that the legal status of cities or towns in respect to their water systems is as set forth in sections 70-105, 70-103, 11-981, 11-966, subd. (4), R. C. M. 1947. The first question on this appeal as I view this case is, do the above enumerated statutes *expressly* grant or necessarily imply that cities or towns have the exclusive right or power to tap and make junctions with the city or town water mains, wipe the

unions and joints, fit the valves and install and adjust the service boxes?

I find no *exclusive* power nor implied *exclusive* power or authority for a city or town to invest public taxpayers' funds in a large stock of plumbing supplies and to engage in the plumbing business. Further I find no statutory authority nor *exclusive* right nor *exclusive* power granted to cities and towns to do the plumbing work here complained of with their *unlicensed employees* in *competing with licensed plumbers* in doing the skilled craftsman work of a plumber.

This controversy arose because the City of Billings, since about July 1, 1956, has taken to itself the exclusive right to do, and has performed all of the plumbing here in controversy with its own employees and its own plumbing supplies from its own warehouse. The city employees, *not licensed plumbers, attempt to and do make junctions with the city water mains, wipe the unions and joints, fit the valves, adjust the boxes, and install the same.* I repeat these city employees *are not licensed plumbers.* Is this court to hold that the city or town through its *unlicensed employees* have the *exclusive* right to do this plumbing?

The implications inherent in the majority opinion are obviously dangerous. Under the present law may this court grant the city or town the *exclusive right* to go into the business of plumbing and the trade of plumbing, as well as other businesses, trades or professions in competition with private enterprise? The city and town conducting such plumbing business as the warehousing, furnishing and selling of plumbing supplies and the installation thereof by its own employees is carrying on such business and trade in its proprietary capacity. The city carrying on such a business in its proprietary capacity is as amenable to the laws of the state as any other corporation or person and its employees are amenable to the laws of this state in the same degree as any other corporation's employees.

While the laws grant the city the power of control, regulation and supervision over its water system, it is my opinion

that such grant cannot be held to be the basis for an implication that the city has the *exclusive* right to make connections with the water mains, nor the right in any event to use unlicensed employees to do the skilled work of plumbers, as complained of here.

The city may control and regulate the manner in which *licensed plumbers* do this plumbing work in connecting with the city and town's water system. Such powers as granted *within our statutes* do not give the *exclusive* right to do the work, nor the unlawful situation, as here, of doing the work with employees, who in the eyes of the state are unlicensed and thus incompetent.

Our legislature under the sovereign police power has, in order to safeguard life, morals, the public health, and property, enacted legislation covering a great many professions and trades. Our legislature has prescribed who may practice medicine in this state, who may practice architecture, nursing, pharmacy, who may prepare abstracts of title, who may do engineering and surveying, barbering, yes, and who may practice law, as well as who may be a craftsman in plumbing. These laws have been passed for the very purpose of seeing to it that the public be protected and assured that competent persons only may engage in such professions, crafts, trades and businesses. The state requires such persons to demonstrate their fitness and qualification by tests and examinations by a qualified board appointed by the governor, thus the people are protected from the hazards of incompetent persons.

Under the majority opinion, the city or town may hire any unlicensed employee to do its architectural work, its surveying, its engineering. Schools and cities may hire any unlicensed person as a nurse, and any city or town may have an employee attempt to do all their abstract and legal work. In other words, if a city or town may ignore the plumbing law they may ignore any of the other like laws, they are not bound by the applicable statute.

120

Our legislature by enacting chapter 203, Laws of 1949 (R. C. M. 1947, section 66-2401), has exercised this sovereign power of the state and proclaimed to the people of this state and to this court that: *"Any person* working at the business of plumbing, in *any incorporated city or town in this state containing more than one thousand inhabitants, either as a master plumber or as a journeyman plumber, shall first secure a state license* as hereinafter provided." Emphasis supplied.

And section 66-2402, R. C. M. 1947, is as follows:

*"Any such person desiring to work at the business of plumbing* in any such city or town shall file his application *for a state license* with the secretary of the board of plumbing examiners of the state of Montana, and *shall* at such time and place as may be designated by the board of examiners of plumbers by the state of Montana, be examined as to his qualifications for working in such business." Emphasis supplied.

The word "any" as used in the above statutes means, "one or all," and indicates the maximum of any number. See Webster's New International Dictionary (2d ed.). Black's Law Dictionary, (Deluxe Ed.) defines the word "any" as "an indefinite number * * * given the full force of 'every' or 'all'." Cases cited in Commonwealth v. Dougherty, 156 Pa. Super. 520, 40 A. (2d) 902, 903, and in Warburton-Beacham Supply Co. v. City of Jackson, 151 Miss. 503, 118 So. 606, a "plumber" has been defined as a skilled tradesman, *who furnishes,* fits, installs, and replaces water pipes, makes the junctions in the water mains and installs other sanitary and fire protection apparatus.

Private enterprise, I hope, may always enter into this field and compete with the city or town, subject of course to its regulations and the laws of the state. If the city does seek to do some of the plumbing work by its own employees and compete with private enterprise there can be no escape in my opinion from the requirements of the law that their employees, just as those plumbers and plumber employees of private enterprises, must be licensed plumbers to engage therein, in accord-

ance with the terms of chapter 203, Laws of 1949, being R. C. M. 1947, sections 66-2401 to 66-2411, inclusive.

The cases cited in the majority opinion as authority therefor have no application to the issues raised in this appeal. It may very well be that a city or town is able to successfully compete with, and supplant, the small businessman or tradesman, where as here, the city uses the taxpayers' money in doing so, and is thereby enabled to do such plumbing work more economically.