STATE EX REL. GERRY, APPELLANT, *v.* EDWARDS ET AL.,
RESPONDENTS.

(No. 2,928.)

(Submitted October 11, 1910.   Decided October 25, 1910.)

[111 Pac. 734.]

*Municipal Corporations—Taxation—"Corporate Authorities"—*
*Public Parks—Board of Commissioners—Statutes—Constitu-*
*tion—Local Self-government.*

Constitutional Law—Definition of Terms—Presumptions.
1.   In the absence of definite information as to the meaning which the
framers of the Constitution attached to a certain term employed in that
instrument, it will be presumed that they made use of it with refer-
ence to the interpretation theretofore placed thereon by the courts of
last resort in states having the same constitutional provision on the
subject under consideration.

Same—Municipal Corporations—Taxation—Delegation of Power—"Corpo-
rate Authorities."
2.   *Held,* under the presumption stated above, that the words "corpo-
rate authorities" in section 4, Article XII, Constitution of Montana,
which provides that while the legislative assembly shall not levy taxes
upon the inhabitants or property of cities, towns, etc., for municipal
purposes, it may authorize the "corporate authorities" thereof to assess
and collect taxes for such purposes, were intended by the framers of
that instrument to mean those municipal officers who are either
directly elected by the inhabitants of the municipalities, or ap-
pointed in some mode to which they have given their assent.

Same.
3.   Since the exercise of the taxing power is a legislative function, the
term "corporate authorities" as used in section 4, Article XII, of the
Constitution referred to in paragraph 2 above, must be interpreted as
meaning the legislative branch of a city government, to wit, the mayor
and council.

Municipal Corporations—Self-government—Public Policy.
4.   In matters of purely private concern, as distinguished from those
in which the people of the state have an interest in common with the
inhabitants of cities and towns, it is the policy of the state,—as indi-
cated by the several constitutional limitations upon the authority of
the legislature over city affairs, the statutes, and the decision in
the case of *Helena Con. Water Co.* v. *Steele,* 20 Mont. 1,—to confide to
the citizens of municipalities the right of local self-government to the
utmost extent compatible with an orderly system of state government.

Same—Local Matters—Self-government—Public Parks.
5.   Matters pertaining to the creation and maintenance of public parks
in cities are of a purely local and private concern, over which under
the doctrine of self-government the municipalities have exclusive con-
trol.

Same—Taxation—Public Parks—Board of Commissioners—Statutes—Con-
stitution.
6.   *Held,* that the Act of 1901 (Laws of 1901, p. 73 [Rev. Codes, secs.
3318–3324]), creating, in cities of the first class, boards of park com-

missioners, the members thereof to be appointed by the governor, and empowering them to raise by taxation such sums each year as they may deem necessary to carry on their work, is not only violative of the theory of local self-government established in this state, but also of the provisions of section 4, Article XII, of the Constitution, in that such boards are not "'corporate authorities" which may lawfully assess and collect taxes for municipal purposes.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

MANDAMUS by the state, on the relation of M. H. Gerry, Jr., member of the board of park commissioners of the city of Helena, against Frank J. Edwards, as mayor of the city, and others as members of the city council, to compel a levy of taxes. From a judgment dismissing the proceedings, relator appeals. Affirmed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. C. Day* submitted a brief in behalf of Appellant. Oral argument by *Mr. Day.*

The rules for the construction of the Constitution of the state of Montana have been clearly set forth by this court in the case of *State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 44 Pac. 516, 32 L. R. A. 635, in which case it is held that the legislature has the full taxing power subject only to the limitations placed upon it by the Constitution. Section 4 of Article XII of that instrument is so plain in its terms that it construes itself. It is impossible to express in clearer terms the meaning of the framers of the Constitution. Its purpose was to prevent the legislature from levying direct taxes upon municipalities for municipal purposes. But the power, unlimited, is given to the legislature to confer the power of taxation upon "corporate authorities." The Constitution does not anywhere define the term "corporate authorities," nor does it undertake to limit the power of the legislature in the creation of municipalities except by the terms of section 6, Article VI, which provides that the legislative assembly may provide for the election or appointment of such municipal officers as public convenience may require, *etc.* The mayor and board of alder-

men, constituting the city council, are not officers whose powers and prerogatives are defined by the Constitution. That instrument nowhere refers to them or attempts to define what bodies or officials shall constitute the corporate authorities of a city. The legislature may confer all of the powers of a municipality upon a city council, or it may divide up the responsibility and confer the powers upon various boards and officials, whether elective by the people or appointive by the governor. No limitations whatever as to these powers are to be found in the Constitution. Section 36 of Article V provides that corporate powers shall not be conferred upon special commissions. This court has recently construed that section. (See *State* v. *Edwards,* 38 Mont. 250, 99 Pac. 940.) No distinction in principle can be found between the power to create the board of police commissioners and the power to create the board of park commissioners. Both are part of the city government, and each in its sphere performs corporate functions. The case of *In re Board of Public Works,* 12 Colo. 188, 21 Pac. 481, followed by this court in *State* v. *Edwards, supra,* is illustrative of the proposition here involved; for the powers conferred upon the board of public works of the city of Denver is as extensive as those conferred upon the board of park commissioners under the laws of Montana.

In the absence of any limitations in the Constitution, the legislature has full power to create the board of park commissioners, and give to that board the performance of such municipal duties as to the legislature may seem fit. We submit that the case of *State* v. *Edwards* has determined all the questions at issue in this case; however, we refer the court to *Wulf* v. *Kansas City,* 77 Kan. 358, 94 Pac. 207; *Merryweather* v. *Garrett,* 102 U. S. 472, 26 L. Ed. 197; *Barnes* v. *District of Columbia,* 91 U. S. 540, 23 L. Ed. 440.

Public parks, streets and boulevards are not for the sole use and benefit of the citizens of the city, but are for the enjoyment of the public generally. That the city may be required by legislative Act to establish parks and boulevards and pay the ex-

pense incident to their maintenance and creation must be conceded. The legislature, instead of requiring the mayor and council to ascertain and levy the necessary taxes therefor, may, in the absence of constitutional prohibition, devolve that duty upon another agency created by law; and it does not lie in the mouth of the city council to question the authority of the legislature in that respect. It is the creature of the legislature, and its creator may confer or withhold powers at its pleasure.

*Mr. Edward Horsky,* in behalf of Respondents, submitted a brief and argued the cause orally.

The Park Commission Act is in violation of section 4, Article XII, of the Montana Constitution. In Illinois the clause of the Constitution relating to municipal taxation employs the same term "corporate authorities" as found in section 4. Construing this language as applied to cities, the supreme court of that state in *Lovingston* v. *Wider*, 53 Ill. 302, held that the words mean "those municipal officers who were either directly elected by the people or appointed in some mode to which they have given their assent." (See, also, *People* v. *City of Chicago*, 51 Ill. 17, 2 Am. Rep. 278; *People* v. *Knopf*, 171 Ill. 191, 49 N. E. 426; *Harward* v. *St. Clair etc. Co.*, 51 Ill. 130; *Wider* v. *City of East St. Louis*, 55 Ill. 133; *Quincy* v. *Cooke*, 17 Otto, 549, 27 L. Ed. 549; *State* v. *Andrews*, 11 Neb. 523, 10 N. W. 410.)

The citizens and taxpayers of the various cities have no voice in the election or appointment of the commissioners. It is a case, pure and simple, of the city council being obliged to ministerially levy the tax requested by the park commission. Neither the council nor any corporate authority of the city is given a voice in the matter, beyond the fact that the mayor is made one of a board of seven. After the levy is made and the tax collected, the park commission, and it alone, shall say how, when and where the funds shall be disbursed. The corporate authorities are voiceless and helpless. The commission is given power not only to install public parks, but to expend the funds

on street parking and boulevarding heretofore installed and now being maintained, by way of special assessments in the form of special improvement districts.   Thus a species of double taxation, under the guise of a park commission must result if any of its funds are used for these purposes.

The Act is also violative of the principle of local self-government, which is the very essence of an American form of government.   (See *Rathbone* v. *Wirth,* 40 N. Y. Supp. 535, 6 App. Div. 277; *State ex rel. Howe* v. *Mayor etc. of Des Moines,* 103 Iowa, 76, 64 Am. St. Rep. 157, 72 N. W. 639, 39 L. R. A. 285.)

So far as the power to tax exists in a municipal corporation, it is by grant, and is called a franchise.   (*O'Byrne* v. *Savannah,* 41 Ga. 331, 5 Am. Rep. 532.)   The words "authority of law," when used with reference to the power of a municipality to tax, can refer only to an Act of the legislature, the law-making power under the Constitution, duly passed and approved.   (*Reineman* v. *Covington etc. R. Co.,* 7 Neb. 310.)   When the legislature confers upon a municipality powers of taxation, it grants all the powers possessed by itself in respect to the imposition of taxes.   (*Newport News etc. R. Co.* v. *Newport News,* 100 Va. 157, 40 S. E. 645; *Woodall* v. *Lynchburg,* 100 Va. 318, 40 S. E. 915; *Henderson Bridge Co.* v. *Henderson,* 173 U. S. 592, 19 Sup. Ct. 553, 43 L. Ed. 823; *Henderson* v. *Hughes County,* 13 S. D. 576, 83 N. W. 682.)

Section 36, Article V, of the Constitution prohibits the delegation of the taxing power "to any special commission," etc., and section 4, Article XII prohibits its delegation to anyone except the "corporate authorities."   If, therefore, any commission is selected which is composed of authorities not corporate, then such a commission is special, in the sense that the statute will single out a commission which is separate and apart from the general class of corporate authorities.   It is, we believe, impossible to fairly construe and reconcile these two clauses in the Constitution under any other hypothesis; for if it be held that so long as a given commission is not special when made applicable to all cities, then what becomes of the phrases,

"shall not delegate," "any power," "to levy taxes," "to any special commission"?

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On September 29, 1910, the board of park commissioners of the city of Helena, through M. H. Gerry, Jr., one of its members, presented to the district court of Lewis and Clark county an affidavit, in which it is recited that the persons named are the duly appointed, qualified, and acting members of the board and, together with the mayor of the city of Helena, constitute such board; that pursuant to the provisions of section 3319, Revised Codes, the board met in regular session and made an estimate of the amount of money which will be necessary to carry on the work of the board for the ensuing year; that such amount is $11,500 and is actually necessary for the work of the board; that to raise this sum will require a tax levy of not more than one mill on the dollar of the assessed valuation of the taxable property of the city; that such amount was duly certified to the city council of the city of Helena, on a date prior to the time when the city council was required to make the annual levy of taxes for city purposes; that when the city council met on September 19, 1910, to make the levy of taxes for city purposes, it failed and refused, and has ever since failed and refused, to make any levy whatever for park purposes or to meet the requirements of the park board. Upon the filing of this affidavit, an alternative writ of mandate was issued, and upon the return thereof the mayor and councilmen filed a joint demurrer and a joint motion to quash the writ. The demurrer and motion were sustained, the proceedings dismissed, and a judgment rendered and entered in favor of the defendants, from which judgment this appeal is prosecuted.

There is hereby presented for our determination the question of the validity of an Act of the Seventh Legislative Assembly, entitled "An Act Creating a Board of Park Commissioners as a Department of the City Government in Cities of the First Class,

Defining Its Powers and Duties, Fixing the Term of Office of Commissioners and Providing for Their Appointment by the Governor," approved March 7, 1901 (Laws 1901, p. 73) ; and this must be determined by the proper solution of the two other questions: (1) What did the framers of the Constitution mean by "corporate authorities"? and (2). What view was entertained by the framers of our Constitution as to the status of cities in this state?

1. The purpose of this Act, as indicated by the title, is to create a board of park commissioners in all cities of the first class. The board is composed of the mayor and six other members who are appointed by the Governor. The Act provides for the organization of the board, enumerates its duties and powers and the duties of the clerk. Section 2 of the Act provides: "Said board of park commissioners shall have the following powers and be charged with the following duties: * * * (6) To raise by taxation such a sum each year as the board shall determine to be necessary to defray the expenses of carrying out the work of said board not exceeding, however, in any one year a sum equal to an assessment of one-tenth of one per cent upon all of the taxable property of the city as the same appears by the assessment-roll of the county for said year." Section 5 of the Act (section 3322, Revised Codes) provides that every year, on or before the day when the city council is required to make the annual tax levy for city purposes, the park board shall make an estimate of the amount of money necessary to be raised for park purposes, and shall certify the amount of such estimate to the city council, and "thereupon it shall be the duty of the city council to cause the sum stated in said certificate to be included in the assessment of city taxes for said year," *etc.* It is not necessary to refer to the other provisions of the Act at this time. Subdivision 6 of section 2 of the Act above in express terms vests in this board of park commissioners the power and authority to levy taxes for park purposes upon all taxable property within the city. There is not any discretion whatever left in the city council with

respect to this item of taxation. When the council receives the certified estimate from the park board, it is compelled to raise the amount of funds necessary to meet the requirements of the board, or, in other words, the city council is the mere agent of the board for the purpose of collecting the tax.

(a) Section 4 of Article XII of the Constitution of Montana provides: "The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or municipal corporation for county, town, or municipal purposes, but it may by law vest in the corporate authorities thereof. powers to assess and collect taxes for such purposes." If this board of park commissioners is one of the *corporate authorities* of the city, within the meaning of those words as used in the Constitution above, then this Act does not violate the letter of the Constitution, otherwise it does; and the determination of this must rest upon the proper definition of those words, as understood and used by the framers of the Constitution in 1889. What were those words intended to mean? This question is not a new one. It has received the attention of the courts during the last half century. Many years before the adoption of our Constitution, the words "corporate authorities," as used in section 4, Article XII, above, had been given a judicial definition. In 1869 the supreme court of Illinois, in *Harward* v. *St. Clair Drain Co.*, 51 Ill. 130, was called upon to determine the meaning of those words as used in the Constitution of Illinois in the same connection as they are used in our Constitution above. In that case the statute under consideration created a board, named the members, and gave to the board taxing power. After much consideration of the question, the court expressed its determination as follows: "As the object of this constitutional clause was to prevent the legislature from granting the power of local taxation to persons over whom the population to be taxed could exercise no control, it is evident that, by the phrase 'corporate authorities,' must be understood those municipal officers who are either directly elected by such population, or appointed in some mode to which they have given their assent."

This was approved in *People ex rel. McCagg* v. *Mayor of Chicago,* 51 Ill. 17, 2 Am. Rep. 278; *People ex rel. South Park Commissioners* v. *Common Council of Chicago,* 51 Ill. 58; *Lovingston* v. *Wider,* 53 Ill. 302; and the definition of the words, as thus given, is referred to with approval in many other cases. In the absence of any definite information as to the meaning which the framers of our Constitution attached to the words "corporate authorities," it is a fair presumption that they used them with reference to the meaning which they had acquired in other states having the same constitutional provision.

(b) The framers of the Constitution must have understood the rule of law, which is universally recognized, that the exercise of the taxing power is the exercise of legislative authority; and, when they determined that the power to levy taxes for city purposes should be exercised only by the corporate authorities of the city, they must have meant by the "corporate authorities" those who constitute the legislative branch of the city government—at this time, the mayor and city council. In Nebraska an Act of the legislature of 1881 provided that the corporate authorities of a city should have the power to license, regulate, and prohibit the liquor traffic in the city. Viewing this exercise of power as a legislative Act, the supreme court of Nebraska, in *State ex rel. Fairchild* v. *Andrews,* 11 Neb. 523, 10 N. W. 410, said: "By the term 'corporate authorities,' as we understand it, is evidently meant those officers of the cities or villages to whom is given the ordinance making power, which in cities of the second class, to which Crete belongs, are the mayor and council thereof."

2. What view did the framers of our Constitution take of city government, so far as the taxing power is concerned? Many years prior to the adoption of our Constitution, the question of the relation of a city to the state legislative branch of government, as affected by the exercise of the taxing power for local municipal purposes, had led to extensive litigation, with the result that two well-defined theories had been developed, *viz.:* (a)

the theory of absolute legislative control; and (b) the theory of local self-government.

(a) Speaking of this first theory, Gray, in his Limitations of Taxing Power (section 651), says: "The courts which assert the wider powers of the legislature in matters of local interest regard the local subdivisions purely as agencies of the state. They carry the doctrine that the legislature is supreme in matters of taxation to its fullest extent. They regard the state legislatures as having the whole legislative power of the state, without any implied exceptions in favor of local self-government." The states which adopt this view are Delaware (*Coyle* v. *McIntire,* 7 Houst. 44, 40 Am. St. Rep. 109, 30 Atl. 728); Georgia (*Churchill* v. *Walker,* 68 Ga. 681); Kansas (*Wulf* v. *Kansas City,* 77 Kan. 358, 94 Pac. 207); Nebraska (*Redell* v. *Moores,* 63 Neb. 219, 93 Am. St. Rep. 431, 88 N. W. 243, 55 L. R. A. 740); Texas (*Brown* v. *Galveston,* 97 Tex. 1, 75 S. W. 488); Pennsylvania (*Philadelphia* v. *Fox,* 64 Pa. 169); and North Carolina (*Harriss* v. *Wright,* 121 N. C. 172, 28 S. E. 269). A reference to the Constitution of each of the foregoing states discloses that there is not any limitation therein on the power of the legislature to control matters relating to municipal taxation, unless it be to fix a limit beyond which the tax levy shall not extend; and every one of the foregoing cases was decided upon the theory that, since the Constitution did not limit the exercise of the taxing power of the legislature in municipal affairs, the legislature could provide by law for the exercise of that power by means of any agency it should choose to create, even though in the selection of such agency the people to be taxed did not have any voice.

Ohio, Nevada, New York, Rhode Island, and Colorado are erroneously classed by some jurists and text-writers with the states above, and the cases cited to justify this classification are: *State ex rel. Attorney General* v. *Covington,* 29 Ohio St. 102; *State ex rel. Rosenstock* v. *Swift,* 11 Nev. 128; *Town of Duanesburgh* v. *Jenkins,* 57 N. Y. 177; *Newport* v. *Horton,* 22 R. I. 196, 47 Atl. 312, 50 L. R. A. 330; *In re Senate Bill Providing*

*for a Board of Public Works in the City of Denver,* 12 Colo. 188, 21 Pac. 481. The Ohio case and the case from Rhode Island involve the right of the state through the legislature to provide boards of police commissioners, and each is decided upon a principle to which reference will be made hereafter.

In the Nevada case it is held that an Act incorporating Carson City and naming the provisional or initiatory board of trustees was valid, but upon the subject of local self-government it was said: "Nevertheless, the principle of local self-government has always been recognized, to a certain extent, by the legislature of this state in the passage of statutes creating and providing for the government of municipal corporations, and the selection of officers and agents to administer the affairs of such corporations has generally been intrusted to the electors of the respective municipalities, or their appointment committed to the authorities thereof; and it cannot, with propriety, be said that the legislature have wholly disregarded this principle in the passage of the Act under consideration, because by section 3 of the Act the entire government of the city is vested in a board of trustees, to consist of five members, who are required to 'be actual residents and owners of real estate in the city, and to be chosen by the qualified electors thereof.'" The court properly makes the distinction between the provisional officers who are merely agents of the legislature to set in motion the machinery of government, and the permanent officers of the city—a distinction that is recognized by the authorities generally. (Mechem's Public Offices and Officers, sec. 123.)

In the early New York case above, it was held that the legislature might compel a city to subscribe for shares of stock of a railroad company in aid of the construction of a railroad, and the decision is apparently based upon the theory that the building of the road was a public improvement in which the people generally were interested; but in the recent case of *Rathbone* v. *Wirth,* 6 App. Div. 277, 40 N. Y. Supp. 535, the supreme court of that state quotes with approval from Black on Constitutional Law, section 131, the following: "The principle of local self-

government is regarded as fundamental in American political institutions. It means that local affairs shall be decided upon and regulated by local authorities, and that the citizens of particular districts have the right to determine upon their own public concerns without being controlled by the general public or the state at large. For this purpose municipal corporations are established and are invested with rights and powers of government subordinate to the general authority of the state, but exclusive within their sphere. 'It is axiomatic that the management of purely local affairs belongs to the people concerned, not only because of being their own affairs, but because they will best understand and be most competent to manage them. The continued and permanent existence of local government is therefore assumed in all the state constitutions, and is a matter of constitutional right, even when not in terms expressly provided for. It would not be competent to dispense with it by statute.' The institution of local self-government is not an American invention, but is traditional in England, and is justly regarded as one of the most valuable safeguards against tyranny and oppression. It is but an extension of this idea that the government of the United States should be intrusted with only such powers and rights as concern the welfare of the whole country, while the individual states are left to the uncontrolled regulation of their internal affairs.''

Responding to a request from the legislature, the supreme court of Colorado expressed the opinion that an Act creating a board of public works for the city of Denver, the members of which were to be appointed by the governor, was not violative of the Constitution of Colorado; but in the course of the opinion it is said: ''There is strong reason for recognizing, so far as may be compatible with the general public interests, the right of local self-government in cities and towns; but this is, with us, generally a matter pertaining to the policy or wisdom of proposed legislation, rather than a question of constitutional construction. We must not, however, be understood as saying that any and every legislative interference with local municipal affairs would be free from constitutional objection.''

(b) The theory of local self-government: In *People ex rel. Le Roy* v. *Hurlbut,* 24 Mich. 44, 9 Am. Rep. 103, the supreme court of Michigan asserts the inherent independence of the cities of that state in matters of purely local concern. The question of the exercise of the taxing power was not directly involved. The Constitution of Michigan then did not in express terms limit the authority or control of the legislature over cities, but the eminent members of that court, Cooley, Campbell, Christiancy, and Graves, held that there was implied in the Constitution the right of the inhabitants of a city to local self-government with respect to matters of purely local concern. In *People ex rel. Board of Park Commissioners* v. *Common Council of Detroit,* 28 Mich. 228, 15 Am. Rep. 202, the validity of an Act of the legislature creating a park board for the city of Detroit, naming the members and defining the duties and powers of the board, was in question. Among others, the board was given the power to purchase land for park purposes, and, upon certifying the amount necessary to make such purchases to the council, the council was required to provide the money by the issuance and sale of city bonds. Because of the fact that in the selection of the board the people of the city did not have any voice, because the city council was not given any discretion in the matter of raising the funds for the board, and because of the fact that the exercise of such authority by the legislature would destroy the right of the residents of the city to local self-government, the supreme court of Michigan refused to compel the city council to furnish the funds demanded by the board, and in doing so held that the Act of the legislature was unconstitutional. These two decisions by the Michigan court are everywhere cited as leading cases upholding the theory of local self-government. The doctrine is reiterated in *Blades* v. *Board of Water Commissioners of Detroit,* 122 Mich. 366, 81 N. W. 271. The view entertained by the Michigan court is adopted and asserted in Illinois (*People ex rel. McCagg* v. *Mayor of Chicago,* 51 Ill. 17, 2 Am. Rep. 278) ; in Indiana (*State ex rel. Holt* v. *Denny,* 118 Ind. 449, 21 N. E. 274, 4 L. R. A. 65) ; in Iowa (*State ex rel. White* v. *Barker,* 116 Iowa, 96, 93 Am. St. Rep. 222, 89 N. W.

204, 57 L. R. A. 244) ; in Kentucky (*City of Lexington* v. *Thompson,* 113 Ky. 540, 101 Am. St. Rep. 361, 68 S. W. 477, 57 L. R. A. 775) ; in Alabama (*Schultes* v. *Eberly,* 82 Ala. 242, 2 South. 345) ; in North Dakota (*Vallelly* v. *Board of Park Commissioners,* 16 N. D. 25,. 111 N. W. 615, 15 L. R. A., n. s., 61) ; and in California (*People* v. *Lynch,* 51 Cal. 15, 21 Am. Rep. 677). The courts of these states have not agreed together as to the particular ground for the decisions, but all have asserted the doctrine of local self-government in municipal affairs.

With these two theories thus established, the same question in principle as the one which confronts us came before this court in 1897, in *Helena Consolidated Water Co.* v. *Steele,* 20 Mont. 1, 49 Pac. 382, 37 L. R. A. 412. The question arose directly with reference to the validity of subdivision 64 of section 4800 of the Political Code of 1895 (Revised Codes, sec. 3259), which made it mandatory for a city in which there was installed a water system to procure the existing plant if it desired to own or control a water supply of its own. In other words, the legislature sought to coerce a city to procure a particular water supply. The court, speaking through Chief Justice Pemberton, said: ''To purchase such plant or system necessarily requires the city or town to incur an indebtedness. When an indebtedness is incurred by a city or town, it necessarily requires the assessment of taxes upon the property of the inhabitants, and the collection thereof, to meet and discharge such indebtedness. Is such indebtedness or obligation such a one as the state has the right to impose upon a city or town, or compel a city or town to assume without its consent? A city or town is bound to do and perform, and may be compelled to perform, certain public duties. But there are certain local and private obligations and offices which a city or town may or may not perform, and which they cannot be compelled by the state to perform.'' The court then reviewed at great length the decision of the Michigan court in *People ex rel. Board* v. *Common Council of Detroit,* above, and the decision from Illinois in *People ex rel. McCagg* v. *Mayor of Chicago,* above, and with respect to them said: ''These two de-

cisions from which we have quoted so largely, delivered by two of the ablest jurists that this country has produced, are leading cases upon the questions involved in this appeal. These two distinguished judges declare that the cases have been exhaustively argued by the best lawyers of the respective states. These cases are, in our judgment, absolutely conclusive of the one question presented by this appeal, namely, the constitutionality of the compulsory statute under which this action is prosecuted.'' Finally the court held that, in so far as the Act then in question sought to impose upon a city an obligation against its will, it was violative of our Constitution and void, and, concluding the opinion, said: ''We think the two provisos of the law under discussion are in violation of the clauses of the Constitution quoted and referred to above, as well as the spirit of our governmental system, which recognize 'that the people of every hamlet, town and city of the state are entitled to the benefits of local self-government.' The law is not supported by any moral obligation, but is rather a violation of law, equity, the Constitution, as well as the principle of moral obligation invoked by the respondent. It violates the general rule of the law that the consent of parties to a contract is essential to its validity, whether the parties be natural or artificial persons. We are at a loss to find any theory of law, equity, or justice upon which we can conscientiously sustain the constitutionality of the statute in question.''

It will thus be seen that the theory of local self-government in matters of purely private concern as distinguished from the theory of absolute legislative control, was adopted in this state as early as 1897, and we think rightly so. We must assume that the framers of our Constitution had a purpose in view in denying to the legislature the right to levy taxes upon the property or people of any city for city purposes; and it cannot be imagined that they intended that what they had declared could not be done directly could nevertheless be accomplished by indirection. If the legislature can create this park board, and authorize the governor to appoint the members, by the same

token of authority the legislature itself could have named in the bill the members of such board, and, had it done so, then, in effect, it would have answered the framers of the Constitution by saying: We have not levied taxes upon the people and property of this city for park purposes directly, but we propose to accomplish the same result by creating this board as our agent to do so.

In treating of our system of government, Bryce, in his work entitled "The American Commonwealth" (volume 2, page 611), says: "Nothing has more contributed to give strength and flexibility to the government of the United States, or to train the masses of the people to work their democratic institutions, than the existence everywhere in the northern states of self-governing administrative units, such as townships, small enough to enlist the personal interest and be subject to the personal watchfulness and control of the ordinary citizen. Abuses have indeed sprung up in the cities, and in the case of the largest among them have become formidable, partly because the principle of local control has not been sufficiently adhered to. Nevertheless the system of local self-government as a whole has been not merely beneficial, but indispensable, and well deserves the study of those who in Europe are alive to the evils of centralization, and perceive that those evils will not necessarily diminish with a further democratization of such countries as Britain, Germany, and Italy."

We cannot conceive of any purpose which the framers of our Constitution had in drafting section 4, Article XII, above, except to secure to the people of these cities that measure of local self-government which they enjoyed at the time the Constitution was framed and adopted.

The several constitutional limitations upon the authority of the legislature over city affairs, the adoption of the initiative and referendum as applied to municipal legislation (sections 3266–3276, inclusive, Revised Codes), and the decision by this court in the case cited above, indicate that it is the public policy of this state to confide to the citizens of municipalities

the right of local self-control to the utmost extent compatible with an orderly system of state government. The decision in *Helena Consolidated Water Co.* v. *Steele,* above, then, is conclusive of this case, if the purpose sought to be promoted by the creation of this park board is one of private concern to the city, as distinguished from one in which the people of the state have an interest in common with the citizens of Helena.

In Gray on Limitations of Taxing Power, section 638, it is said that there are "cases in which the right of local self-government is asserted, but in which the courts differ as to what are matters of purely local concern." We fail to see what general interest the people of this state as a whole have in the public parks of the city of Helena. Primarily at least, such parks are for the adornment of the city and for the pleasure and recreation of its people. While visitors may enjoy them freely as a matter of right, yet if that bare, intangible right is sufficient to create the public interest of the entire people of the state in these parks, then it is difficult to understand what is meant by the purely local and private concerns of a city. In *People ex rel. Board* v. *Common Council of Detroit,* above, the question arose over the right of the state to control the public parks of Detroit, through the agency of a park board, and the court determined that such parks are purely local concerns of the city, in which the people of the state do not share a common interest. The same thing is asserted in *People ex rel. McCagg* v. *Mayor of Chicago,* above; and these are the two cases chiefly relied upon by this court in *Helena Consolidated Water Co.* v. *Steele,* above, to justify the conclusion that a municipal water supply is likewise a strictly local or private concern of the city, as distinguished from one in which the people generally have a common interest.

Reference is made to the decision of this court in *State ex rel. Quintin* v. *Edwards,* 38 Mont. 250, 99 Pac. 940, wherein we upheld the validity of a statute creating a police commission. That case is typical of many asserting that the people of the state generally have such an interest in the preservation of the

peace and good order of society in every portion of the state that the legislature may exercise a supervision over the police department of any city within the state. That police regulation is not a matter of purely local concern is recognized generally; and in the case above we held that a police officer is not a city officer, but occupies a dual position, exercising some functions of a state officer and some of purely local character.

In all of the states asserting the doctrine of local self-government, the distinction is made between the affairs of a city which are of a public nature—that is, those in which the people of the state have, with the people of the city, a common interest—and those private municipal affairs which are of a purely local character and primarily affect only the inhabitants of the particular city. All these courts recognize the right of the state, through its legislative department, to coerce a city in the performance of a public duty, as distinguished from one of a private or local nature.

Our conclusion is that this park board is not a corporate authority of the city of Helena, within the meaning of the Constitution; that the purpose it was created to promote is a purely local or private concern of the city; and that in bestowing upon individuals in whose selection the people have had no voice the power to levy taxes upon the people who must pay them, and in attempting to coerce these people against their will to pay such taxes, the legislature not only violated the provisions of section 4 of Article XII, above, but did equal violence to the theory of local self-government which has been established in this state as one of the fundamental principles of our government.

The judgment of the district court is affirmed.

*Affirmed.*

MR. JUSTICE SMITH concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.