STATE ex rel. GEBHARDT et al., RESPONDENTS, v. CITY
COUNCIL OF THE CITY OF HELENA et al., APPEL-
LANTS.

(No. 7,487.)

(Submitted February 7, 1936. Decided March 7, 1936.)

[55 Pac. (2d) 671.]

*Mr. John W. Mahan,* City Attorney of Helena, Montana, *Mr. George S. Smith,* City Attorney of Billings, and *Mr. Donovan Worden,* City Attorney of Missoula, Montana, of Counsel, for Appellants, submitted an original and a reply brief and argued the cause orally.

*Messrs. Weir, Clift, Glover & Bennett* and *Messrs. Church & Jardine,* for Respondents, submitted a brief; *Mr. Harry P. Bennett* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This action involves the constitutionality of Chapter 55 of the 1935 Session Laws of the legislative assembly relating to the salaries of policemen in cities of the first class, and in all other cities which have or may elect to come under the provisions of Chapter 120 of the 1929 Session Laws defining the qualifications of police officers and providing for the creation of police reserves.

Plaintiffs in the action are members of the police force of the city of Helena, a city of the first class, and they seek to compel the city to pay their salaries as provided by the Act referred to. The complaint sets out the essential jurisdictional facts, alleges that the salaries of the plaintiffs have been fixed by ordinance and paid at less than that provided by Chapter 55; and they also allege their demand upon the defendants as officials of the city for the payment of salaries in accordance with the provisions of the Act and refusal by the defendants. An alternative writ of mandate was issued as prayed for, directing defendants to fix and pay plaintiffs' salaries as provided by the Act or appear at the time specified and show cause why the writ should not be complied with. At the hearing on the order to show cause the defendants moved to quash the writ, contending, among other things, that the complaint did not allege facts sufficient to justify the issuance of the writ; the motion to quash was denied and defendants given ten days in which to plead further; their answer was

duly filed, which contained, among other things, an alleged affirmative defense based upon the budget law. After the pleadings were complete, plaintiffs moved for judgment on the pleadings; the court took the matter under advisement, directed that briefs be filed, and thereafter granted plaintiffs' motion for judgment and directed that the writ issue commanding defendants to comply with the provisions of Chapter 55 by fixing and paying the plaintiffs' salaries as provided in that Act, and also allowing plaintiff attorneys' fees and costs. From that judgment defendants appeal. Defendants assign six specifications of error, five of which are founded on their allegation that Chapter 55 is unconstitutional, and the sixth on the court's allowance of attorneys' fees and costs, and, in addition to such assignments, defendants again raise the question here of the sufficiency of the complaint to justify the issuance of the writ. We think the complaint meets all the essential requirements of good pleading and that defendants' contention on this point cannot be sustained. The only material issue raised by the pleadings goes to the constitutionality of the Act.

The allegation of unconstitutionality and the argument in support thereof are directed against section 1, which is as follows:

"Section 1. That from and after the passage and approval of this Act there shall be paid to each member of the Police Department of cities of the first class of the State of Montana, a minimum wage, for a daily service of eight consecutive hours' work, of at least One Hundred Sixty ($160.00) Dollars per month for the first year of service, and thereafter of at least One Hundred Sixty ($160.00) Dollars per month plus One ($1.00) Dollar per month for each additional year of service up to and including the tenth year of such additional service; provided, however, that members of the Police Department of said cities of the first class, and of those cities and towns that have heretofore elected to come under the provisions of Chapter 120 of the Session Laws of the Twenty-first Legislative Assembly of the State of Montana, at the time of

the passage and approval of this Act, shall thereafter be paid a monthly minimum wage of at least One Hundred Sixty ($160.00) Dollars, plus One ($1.00) Dollar per month for each year of active service after the first year, theretofore rendered by them, not exceeding ten (10) years of such service, after the first year.''

Section 4 of Article XII of our Constitution with which defendants contend the above Act conflicts is: ''The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or municipal corporation for county, town, or municipal purposes, but it may by law invest in the corporate authorities thereof powers to assess and collect taxes for such purposes.''

The merits of this controversy will turn upon whether the city of Helena exercises governmental or proprietary powers in the organization and maintenance of its police department. We see nothing in section 4 of Article XII of the Constitution to support the contention of the defendants. The title of Article XII is ''Revenue and Taxation,'' and its entire eighteen sections deal with the subject announced by its title, and we confirm the interpretation placed upon section 4 by this court in *State ex rel. Gerry* v. *Edwards,* 42 Mont. 135, 111 Pac. 734, 738, Ann. Cas. 1912A, 1063, 32 A. L. R. (n. s.) 1078, cited by defendants, where it is said: ''We cannot conceive of any purpose which the framers of our Constitution had in drafting section 4, Article XII, above, except to secure to the people of these cities that measure of local self-government which they enjoyed at the time the Constitution was framed and adopted.'' Defendants' interpretation by which they would apply the section to prohibit the legislature from fixing the minimum wage of city policemen becomes manifestly erroneous when it is noted that the section applies to counties, cities, and school districts with equal force, and the legislature from the time the government was established has specifically directed by legislative Act what county officers should be elected and fixed their salaries, and directed county commissioners to fix the salaries of appointive officers within certain bounds.

The legislature, of course, has the same power in each subdivision in all matters coming under the head of governmental functions. Long acquiescence in legislative interpretation of a constitutional provision is entitled to great consideration. (*State ex rel. Wallace* v. *Callow*, 78 Mont. 308, 319, 254 Pac. 187, and cases cited.) Section 5095, Revised Codes 1921, ˙ commands the city to provide a police department; section 5107 fixes the salary of the chief of police in cities of the first class at not less than $100, nor more than $300 per month. The last-mentioned section was enacted in 1907 and it has not heretofore been attacked in this court.

This court said in the case of *Griffith* v. *City of Butte*, 72 Mont. 552, 234 Pac. 829, 831, that "the authorities are all agreed upon the proposition that the functions of municipal corporations, although all of a public nature, are properly divisible into two great classes: (1) Governmental, which are those conferred upon such a corporation as a local agency of prescribed and limited jurisdiction to be employed in administering the affairs of the state and promoting the public welfare generally; and (2) municipal, being those granted for the special benefit and advantage of the urban community embraced within the corporate boundaries. (28 Cyc. 267)." These two functions are usually referred to as the dual powers of municipalities or governmental and proprietary powers. Proprietary powers of a municipality are synonymous with the terms home rule and local self-government.

The powers of cities and towns were outlined and defined in *State ex rel. City of Missoula* v. *Holmes*, 100 Mont. 256, 47 Pac. (2d) 624, 629, 100 A. L. R. 581, and reaffirmed in *State ex rel. Kern* v. *Arnold*, 100 Mont. 346, 49 Pac. (2d) 976, 100 A. L. R. 1071. The extent to which the theory of home rule or local self-government is recognized in the various jurisdictions in municipal affairs is treated at length in the annotation on page 1078 et seq. of 100 A. L. R. in connection with the *Arnold Case*, supra. Numerous cases are there grouped that clearly distinguish between the variations of the rule as laid down in different jurisdictions. The rule is applied with

such variations, particularly as to the rights of municipalities to exercise home-rule powers, that it is apt to lead to confusion to rely on the decisions of other courts in determining the scope of such municipal powers here. The rule as applied in this jurisdiction is somewhat at variance with the rule laid down in *City of Trenton* v. *New Jersey,* 262 U. S. 182, 43 Sup. Ct. 534, 537, 67 L. Ed. 937, 29 A. L. R. 1471. In that case it was said that: "In the absence of state constitutional provisions * * * municipalities have no inherent right of self-government which is beyond the legislative control of the state."

This court has said: "A city is but a political subdivision of the state for governmental purposes, owing its very existence to the legislative will, and capable of exercising only such powers as are granted, either directly or by necessary implication." (*City of Helena* v. *Helena Light & Ry. Co.,* 63 Mont. 108, 207 Pac. 337, 339.) This rule, in substance, has been reaffirmed in numerous decisions by this court and is in substantial harmony with the decisions in many other jurisdictions. In applying this rule, however, we are not to be unmindful of the rule referred to in *State ex rel. City of Missoula* v. *Holmes,* supra, where we said that "the theory of local self-government for municipal corporations is firmly established in this state. (*Helena Consolidated Water Co.* v. *Steele,* 20 Mont. 1, 49 Pac. 382, 37 L. R. A. 412; *State ex rel. Gerry* v. *Edwards,* 42 Mont. 135, 111 Pac. 734, Ann. Cas. 1912A, 1063, 32 L. R. A. (n. s.) 1078)."

The governmental division of the dual powers of municipalities is ably expounded in *State* v. *Mason,* 153 Mo. 23, 54 S. W. 524, 529, 534, and does not materially differ from the rule here. In that case a police law enacted by the legislature of the state of Missouri was attacked as unconstitutional for the reason that it fixed the number of policemen and forced the payment of salaries where there was no appropriation made for the payment of such salaries by the city government. There the court said: "Laws like these, and those of other

states, providing a metropolitan police system for large cities, are based upon the elementary proposition that the protection of life, liberty and property, and the preservation of the public peace and order, in every part, division, and subdivision of the state, is a governmental duty, which devolves upon the state, and not upon its municipalities, any further than the state, in its sovereignty, may see fit to impose upon or delegate it to the municipalities. The right to establish the peace and order of society is an inherent attribute of government, whatever its form, and is co-extensive with the geographical limits thereof, and touching every part of its territory. From this duty, existing in the very nature of the state government, flows the corresponding power to impose upon municipalities of its own creation a police force of its own creation, and to compel its support out of the municipal funds. Such is the conceded doctrine by the most learned of our writers upon constitutional law, and such the consensus of judicial decision throughout the United States. * * * Judge Cooley, in his work on Taxation, says: 'One of the highest and first of all duties devolving upon the state is to preserve the public peace. For this purpose peace officers are chosen, judges elected, the militia organized, and the executive armed with very high powers to meet the contingencies of riot and disorder. * * * *In general the belief has prevailed that the public peace and good order were better preserved by apportioning the duty among the several municipal divisions retaining only a state supervision over all.* * * * But, if the local authorities were allowed unlimited discretion to levy or refuse to levy the necessary taxes for the support of the local police force, it might possibly happen that from neglect or refusal to do so one part of the state might be left a prey to disorder and violence, to the general detriment of the state at large.' "

The Supreme Court of the United States in discussing the dual character of municipal corporations, in *Vilas* v. *City of Manila*, 220 U. S. 345, 356, 31 Sup. Ct. 416, 418, 55 L. Ed. 491, said: "They exercise powers which are governmental and powers which are of a private or business character. In the

one character a municipal corporation is a governmental subdivision, and for that purpose exercises by delegation a part of the sovereignty of the state. In the other character it is a mere legal entity or juristic person. In the latter character it stands for the community in the administration of local affairs wholly beyond the sphere of the public purposes for which its governmental powers are conferred.''

In *City of Trenton* v. *New Jersey,* supra, it was said: ''The distinction between the municipality as an agent of the state for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law of municipal corporations. The most numerous illustrations are found in cases involving the question of liability for negligent acts or omissions of its officers and agents. (See *Harris* v. *District of Columbia,* 256 U. S. 650, 41 Sup. Ct. 610, 65 L. Ed. 1146, 14 A. L. R. 1471, and cases cited.) It has been held that municipalities are not liable for such acts and omissions in the exercise of the police power, or in the performance of such municipal faculties as the erection and maintenance of a city hall and courthouse, the protection of the city's inhabitants against disease and unsanitary conditions, the care of the sick, the operation of fire departments, the inspection of steam boilers, the promotion of education and the administration of public charities. On the other hand, they have been held liable when such acts or omissions occur in the exercise of the power to build and maintain bridges, streets and highways, and waterworks, construct sewers, collect refuse and care for the dump where it is deposited. Recovery is denied where the act or omission occurs in the exercise of what are deemed to be governmental powers, and is permitted if it occurs in a proprietary capacity. The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class.''

In *Loeb* v. *City of Jacksonville,* 101 Fla. 429, 134 So. 205, 208, 79 A. L. R. 459, it was said: '' 'Governmental functions' are those conferred or imposed upon the municipality as a

local agency of limited and prescribed jurisdiction to be employed in administering the affairs of the state and promoting the public welfare. (*Bryan* v. *City of West Palm Beach,* 75 Fla. 19, 77 So. 627.) In this state the dual or double capacity in which a municipality acts, exercising two classes of rights, two classes of powers and two kinds of duties, is recognized as in many other jurisdictions in the United States. Considered as an agency of the state, the functions, powers and rights of the municipality are variously designated as public, legislative, political or governmental. (*Vilas* v. *City of Manila,* 220 U. S. 345, 31 Sup. Ct. 416, 55 L. Ed. 491.) Not considered as an agency of the state but in the other of these dual capacities, the functions and powers exercised are variously designated, as private, quasi-private, proprietary, municipal or ministerial, even commercial. (See *City of Trenton* v. *New Jersey,* 262 U. S. 182, 43 Sup. Ct. 534, 67 L. Ed. 937, 29 A. L. R. 1471.) ''

In the case of *City of Logansport* v. *Public Service Commission,* 202 Ind. 523, 177 N. E. 249, 252, 76 A. L. R. 838, it was said: ''The dual capacity or twofold character possessed by municipal corporations is: (1) Governmental, public, or political; and (2) proprietary, private, or quasi private. In this governmental capacity a city or town acts as an agency for the state for the better government of those who reside within' its corporate limits, and in its private or quasi private capacity it exercises powers and privileges for its own benefit. [Citing authorities.] When a municipal corporation engages in an activity of a business, rather than one of a governmental nature, such as the supply of light or water or the operation of a railroad which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its sovereign capacity.'' It is further stated in that case that even under the powers to exercise self-government or home rule a city cannot act on matters purely of a state concern.

The conclusions logically follow that all functions exercised by municipalities are, in a measure, governmental, but we think it is quite obvious that the governmental powers of a city mean the powers a city exercises as an agency of the state,

and that its proprietary powers are those particular powers usually referred to as incidental to home rule or local self-government. So far as municipal corporations of any class are concerned, whether incorporated pursuant to special or general law, when they exercise any power for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of a state, they ▮ are deemed agencies of the state. When a municipality performs an act in compliance with the legislative mandate of the state, it exercises a governmental and not a corporate function. (*Bilderback* v. *City of Klamath Falls*, (D. C.) 6 Fed. (2d) 642; *District of Columbia* v. *Totten*, 55 App. D. C. 312, 5 Fed. (2d) 374, 40 A. L. R. 1461; *Looney* v. *City of Sioux City*, 163 Iowa, 604, 145 N. W. 287, 51 L. R. A. (n. s.) 546; *Hanrahan* v. *City of Chicago*, 289 Ill. 400, 124 N. E. 547; *Bolster* v. *City of Lawrence*, 225 Mass. 387, 114 N. E. 722, L. R. A. 1917B, 1285; *Scibilia* v. *City of Philadelphia*, 279 Pa. 549, 124 Atl. 273, 32 A. L. R. 981; *Spaur* v. *City of Paw-* ▮ *huska*, 172 Okl. 285, 43 Pac. (2d) 408.) In exercising or enforcing any police power the city acts in its capacity as the agent of the state and is subject to absolute state control; in exercising proprietary powers under the home-rule or local self-government theory, the municipality has the same right of independent action that is accorded to private corporations, and, in addition, has such other powers as are reserved to them by the Constitution. For example, it is a duty imposed on the city in its governmental capacity to provide an adequate water supply for city use, but if the city itself undertakes to furnish such water supply by installing a city-owned plant and distributing system, it exercises a proprietary function and is not accountable to the state nor amenable to legislative control to any greater extent than a private corporation.

Taking another view of the controversy involved here, it is universally conceded that "the source of the police power of a municipal corporation is the state, * * * and the exercise of police powers of municipal corporations is a governmental function." (43 C. J., p. 203.) Chapters from 192 to 280, inclusive,

of Part 3 of the Political Code of 1921 (sec. 2444 et seq.), are entitled "General Police of the State." These 88 chapters of our Political Code have to do with such regulatory provisions comprehended by what is termed the "police power" of the state. They are essentially state or governmental functions. Under this heading provision is made for all that multitude of regulatory measures relating to the public safety, the public health, the public morals and all measures affecting the general welfare of the inhabitants of the state. "Police regulations of a city are not made and enforced in the interests of the city in its corporate capacity, but, in the interest of the public." (*Trescott* v. *City of Waterloo*, (C. C.) 26 Fed. 592, 593.)

On the question of legislative powers we said in *State ex rel.* ▮ *Du Fresne* v. *Leslie*, 100 Mont. 449, 50 Pac. (2d) 959, 961, that "the legislature, representing the sovereign power of the state, may exercise such power to any extent it may choose, except to the extent it is restrained or limited by the state and federal Constitutions." Necessarily, if any subdivision of the state claims any specific governmental power and the power claimed conflicts, as here, with any Act of the legislature, such subdivision must point out where the power has been denied to the legislature by the Constitution and show by grant municipal right to assume and exercise that power. The rule is otherwise, however, when applied to a city's proprietary powers.

When carefully analyzed, the admissions made by the de- ▮ fendants in their pleadings and in their briefs leave them very little ground to stand upon in their attack upon the constitutionality of Chapter 55. They point out no constitutional provision that by reasonable construction deprives the legislature of the power exercised by it in the enactment of Chapter 55. Defendants admit that it is mandatory on the city of Helena to have an organized police department and that "in doing so a governmental function is being performed." They also admit that a policeman is a public officer and that the legislature is supreme in any action which has for its purpose the regulation and supervision of the police department of any

city or town within the state of Montana. Defendants have, however, cited some cases which, when applied as obviously intended, give rise to some confusion. Among such cases is *State ex rel. Rowling* v. *Mayor of Butte,* 43 Mont. 331, 336, 117 Pac. 604, 605. In the course of the opinion in that case the court said: "It will therefore be seen at once that the legislature has delegated to the city council the sole authority to determine what amount of money shall be expended in carrying on the city government." The controversy in that case arose out of an act of the mayor in discharging a number of policemen. The decisive question arose on the power of the mayor to act in the premises without the co-operation of the city council, and the pronouncement of the court was made as recited. The court was passing upon the question of the relative power of the mayor and the city council, and that decision has no application here. The decision was based entirely on legislative Acts, and Chapter 55 of 1935, being a subsequent Act, would control in case of any conflict between it and the former Act.

Defendants also cite the case of *State ex rel. Gerry* v. *Edwards,* supra, and quote from that decision as follows: "We must assume that the framers of our Constitution had a purpose in view in denying to the legislature the right to levy taxes upon the property or people of any city for city purposes; and it cannot be imagined that they intended that what they had declared could not be done directly could nevertheless be accomplished by indirection." Defendants then proceed to argue that the legislature has violated the provisions of section 4 of Article XII of the Constitution, because that body has provided a minimum salary for policemen by legislative Act, and by compelling the city to pay policemen a minimum wage, the legislature in fact compels the city to levy taxes and is therefore doing indirectly what it is prohibited from doing directly. A board of park commissioners had been appointed by the Governor for the city of Helena pursuant to a legislative Act and the park board, ignoring the city council, proceeded to levy a tax for park purposes on the property within

the corporate limits of the city in accordance with the legis-
lative Act, and out of that situation the *Gerry Case* arose.
This court held the legislative Act violated the section of the
Constitution defendants here allege Chapter 55 contravenes.
In the *Gerry Case* the legislative Act was a clear and pal-
pable attempt to evade a constitutional provision, but that
case has no application here, where the legislature in the enact-
ment of Chapter 55 proceeded, as clearly shown, within the
limits of its unquestioned police powers.

It will also be noted that section 4 of Article XII of the
Constitution applies with equal force to cities, counties and
school districts, and we think any contention about the legis-
lature doing by indirection what it is prohibited from doing
directly will be fully discredited by consideration of the fol-
lowing constitutional provisions: Section 26 of Article V pro-
vides: "The legislative assembly shall not pass local or special
laws in any of the following enumerated cases: * * *
creating offices, or prescribing the powers or duties of officers
in counties, cities, townships or school districts." This is a
restriction on legislative power to enact local laws, but it
clearly implies legislative power to enact general laws on the
same subjects. Section 1 of Article XI provides: "It shall be
the duty of the legislative assembly of Montana to establish
and maintain a general, uniform and thorough system of pub-
lic, free, common schools." If it became necessary for the
legislature in maintaining the public schools to direct the
school districts to levy taxes, this provision grants that power.
Section 6 of Article XI provides: "It shall be the duty of the
legislative assembly to provide by taxation, or otherwise, suffi-
cient means, in connection with the amount received from the
general school fund, to maintain a public, free common school
in each organized district in the state, for at least three months
in each year." These provisions must, of course, be construed
along with all other provisions of the Constitution, and while
the legislature is not given the direct power to levy taxes or to
appoint local officers, it is clearly the intention of the Consti-
tution that they shall have direct supervision over such mat-

ters and that the local bodies referred to shall be governed by the legislative mandate. The following is a direct command to the legislature to exercise, under certain circumstances, a specific power which cannot be distinguished from the power defendants contend section 4 of Article XII prohibits: Section 8 of Article XII provides: "Private property shall not be taken or sold for the corporate debts of public corporations, but the legislative assembly may provide by law for the funding thereof, and shall provide by law for the payment thereof, including all funded debts and obligations, by assessment and taxation of all private property not exempt from taxation within the limits of the territory over which such corporations respectively have authority." Public corporations in this section of the Constitution include the municipal corporations we have under consideration here, and it means that no private property within the corporate limits of any municipality shall be taken for the debts of the municipality under execution or otherwise, but the legislature can direct by legislative Act that taxes be levied and collected against all the private property within the limits of the municipality to produce the necessary revenue to meet such municipal obligations. Obviously defendants overlooked these provisions of the Constitutions when they state in their brief that they can find no authority to sustain the contention that the legislature has jurisdiction to control the economical and financial affairs of a city, and also failed to recognize the limitations of the municipality as an agent of the state.

Defendants contend that if Chapter 55 is a legal exercise ██ of legislative power and the city is compelled to comply with the mandate of the district court, the city will be obliged to violate the budget law. It is sufficient answer to this contention to state that a judgment of a court of competent jurisdiction giving rise to a municipal obligation is specifically excepted from the provisions of the budget law. (Sec. 7, Chap. 121, Laws 1931.) Furthermore, Chapter 55 was enacted subsequently to the Budget Act, and if the former Act contains any provisions in direct conflict with the later Act, the subsequent Act controls the provisions of the former.

On the question of the power of the legislature to prescribe a minimum wage for public officials there can be no doubt, since the decision rendered in *Atkin* v. *Kansas,* 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148, as the rule laid down in that case is generally recognized in all jurisdictions.

The rules governing this court in the consideration of the [11, 12] validity of a legislative Act are fully laid down in the case of *State ex rel. City of Missoula* v. *Holmes,* supra, where it was said: "In the determination of the question of the constitutionality of any Act, a statute, if possible, will be construed so as to render it valid. (*Hale* v. *County Treasurer,* 82 Mont. 98, 105, 265 Pac. 6.) It is prima facie presumed to be constitutional, and all doubts will be resolved in favor of its validity if it is possible to do so. (*State ex rel. Toomey* v. *State Board of Examiners,* 74 Mont. 1, 238 Pac. 316, 320.) [See, also, *State ex rel. Du Fresne* v. *Leslie,* 100 Mont. 449, 50 Pac. (2d) 959.] The invalidity of a statute must be shown beyond a reasonable doubt before the court will declare it to be unconstitutional. (*Herrin* v. *Erickson,* 90 Mont. 259, 2 Pac. (2d) 296.) And a statute will not be held unconstitutional unless its violation of the fundamental law is clear and palpable. (*Hill* v. *Rae,* 52 Mont. 378, 158 Pac. 826, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495.) The Constitution is, as frequently stated by this court, a limitation upon the powers of the legislature, which in the passage of any law is acting under inherent powers, restricted only by the provisions thereof. (*State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708, 186 Pac. 697.)'' (See, also, *O'Connell* v. *State Board of Equalization,* 95 Mont. 91, 25 Pac. (2d) 114.)

Defendants allege as error the allowance of attorney's fees and costs to plaintiffs. We think this question is foreclosed by the decision of this court in *State ex rel. Shea* v. *Cocking,* 66 Mont. 169, 213 Pac. 594, 28 A. L. R. 772.

The judgment is affirmed.

Mr. Chief Justice Sands and Associate Justices Matthews, Stewart and Anderson concur.