GRACE KINGFISHER, Plaintiff and Appellant, v. THE CITY OF FORSYTH, a Municipal Corporation, and A. W. DEVINE, Defendants and Respondents.

No. 9462.
Submitted May 14, 1957. Decided August 2, 1957.
314 Pac. (2d) 876.

40

Messrs. Leavitt Lucas, Miles City, Mr. F. F. Haynes, Forsyth, for appellant.

Mr. Russell K. Fillner, County Atty., and H. G. Young, Forsyth, for respondent.

Mr. James P. Lucas and Mr. Fillner argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment of dismissal on the pleadings entered by the district court as to the defendant City on its motion. The action was brought by the surviving widow on her own behalf, and on behalf of surviving children for damages for the wrongful death of Charles Kingfisher, which death resulted from a fatal shooting on July 4, 1953, by A. W. Devine, one of the defendants, a policeman of the defendant City of Forsyth. The judgment of dismissal on the pleadings was for the defendant City of Forsyth only.

The complaint, among other things, alleged: That the City of Forsyth is a municipal corporation, and A. W. Devine was the duly appointed, qualified and acting policeman of said City; "That on or about July 4, 1953, the defendant, A. W. Devine, *while on duty as a policeman of the defendant City and while acting in the scope of his employment* and in attempting to take

one Charles Kingfisher into custody, wrongfully, negligently and without justifiable cause and by excessive force and violence shot and wounded the said Kingfisher and from and as a result of said wound the said Charles Kingfisher died on or about July 9, 1953. That the death of the deceased was directly and proximately caused by the wrongful and negligent shooting and wounding by defendant, A. W. Devine.'' Emphasis supplied. That the shooting of the said Kingfisher was willful, wanton and malicious and in addition to actual damages the plaintiff sought exemplary damages.

The defendant City and the defendant Devine both filed demurrers which were overruled and answers filed. By its answer the defendant City denied the allegations of the plaintiff's complaint relative to the shooting of said Kingfisher except that the defendant admitted and alleged that on or about July 4, 1953, the defendant Devine, while on duty as a policeman of the defendant City and while acting in the scope of his employment, as such, did arrest one Kingfisher and lawfully took him into custody; that the defendant City denies all the other allegations of the complaint.

As an affirmative defense the City alleged the existence of the defendant City as a municipal corporation; that it was required by chapter 136, Laws of 1907, and all acts amendatory thereto, R.C.M. 1947, section 11-1801 et seq., to organize, operate and maintain an adequate police force for the protection of the public health, safety and morals, and in compliance with the legislative mandate during the times mentioned, maintained and operated an adequate police force; that during the time mentioned the defendant Devine was the duly appointed, qualified and acting policeman of the defendant City, acting within the course and scope of his employment as such policeman in enforcement of the ordinances of the defendant City made and enacted pursuant to the laws of Montana; that by reason thereof the defendant City, a municipal corporation, in the enforcement of its police regulations is acting as an agency of the state, and that it is not liable for an act of its police officer committed

while acting in the scope and course of his employment as a police officer of said defendant City.

In her reply the plaintiff, among other things, alleged and admitted that defendant Devine was the duly appointed, qualified and acting policeman of the defendant City in the enforcement of the ordinances enacted by said defendant City and particularly the ordinances referred to; and that in the enforcement of the ordinances of said City, which are involved in this action, the said defendant City was acting solely for the benefit and advantage of said City itself, its inhabitants, and in its exclusive supervision and control of its streets, sidewalks and public places. As a further reply the plaintiff alleged the ordinance involved, and that said ordinance was enacted and adopted by the defendant City for the purpose of exercising exclusive supervision and control over its sidewalks, streets and public places for the benefit and advantage of its inhabitants and of defendant City itself; that at the time mentioned the defendant Devine, *while on duty as a policeman of said City,* attempted to take the said Charles Kingfisher into custody, as alleged in plaintiff's complaint, upon the alleged offense of offensive conduct charged in part as follows:

"Offensive Conduct. That upon information and belief at and in said City of Forsyth, the said defendant then being, did then and there violate said section of said chapter and ordinance and did then and there willfully and unlawfully and intentionally become drunk and intoxicated and was found in a drunken and intoxicated condition on the streets and public places of the City of Forsyth, Montana."

The city ordinance involved reads in part as follows: "Offensive Conduct. Every person who shall within the limits of the City of Forsyth * * * be found drunk or intoxicated in any street or public place * * * or who shall annoy and frighten passersby on the streets or sidewalks, * * * shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in a sum not exceeding One Hundred Dollars."

It was further alleged in plaintiff's reply that at the time

involved the said Charles Kingfisher was lawfully upon the streets and public places, and was not violating the provisions of the ordinance quoted above or any other ordinance of said City.

After plaintiff's reply was filed, the defendant City filed a written motion for judgment on the pleadings. Upon the hearing thereof the court sustained the motion as to the defendant City and entered a judgment of dismissal on the pleadings.

Two days after the shooting and prior to the death of Kingfisher, a complaint was filed in the police court of the City of Forsyth charging the said Kingfisher with offensive conduct, under the aforesaid ordinance.

The sole question presented is whether a city is liable for *tortious* acts of a city policeman under pleadings which allege that the *tortious* acts *were committed while acting within the course and scope of employment in enforcing the laws and ordinances of a city?*

We hold that it is not, and the judgment of the district court is affirmed.

The action was brought under R.C.M. 1947, section 93-2810, which provides as follows: "When the death of one person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."

The appellant concedes that the state, counties and municipalities are immune from liability in the enforcement of the public laws of Montana, but argues that in the enforcement of a private ordinance for the benefit of inhabitants of a city only, and in the exercise of home rule, the enforcements of which is of no concern to the state at large, immunity from

liability does not exist, and that the above-quoted section 93-2810 is applicable.

This court has frequently made a distinction between governmental and proprietary powers of a municipal corporation. State ex rel., Gebhardt v. City Council, 102 Mont. 27, 55 Pac. (2d) 671; Felton v. City of Great Falls, 118 Mont. 586, 169 Pac. (2d) 229; Griffith v. City of Butte, 72 Mont. 552, 234 Pac. 829; State ex rel., Brooks v. Cook, 84 Mont. 478, 276 Pac. 958; Witter v. Phillips County, 111 Mont. 352, 109 Pac. (2d) 56.

In State ex rel. Gebhart v. City Council, supra, 102 Mont. at page 37, 55 Pac. (2d) at page 676, this court said:

"Taking another view of the controversy involved here, it is universally conceded that 'the source of the police power of a municipal corporation is the state, * * * and the exercise of police powers of municipal corporations is a governmental function'. 43 C.J., page 203. Chapters from 192 to 280, inclusive of Part 3 of the Political Code of 1921 (section 2444 et seq.), are entitled 'General Police of the State'. These 88 chapters of our Political Code have to do with such regulatory provisions comprehended by what is termed the 'police power' of the state. They are essentially state or governmental functions. Under this heading provision is made for all that multitude of regulatory measures relating to the public safety, the public health, the public morals and all measures affecting the general welfare of the inhabitants of the state. 'Police regulations of a city are not made and enforced in the interests of the city in its corporate capacity, but, in the interest of the public'. Trescott v. City of Waterloo, C.C., 26 F. 592, 593.''

R.C.M. 1947, section 11-1801, makes it mandatory upon all municipalities within the State of Montana to maintain an adequate police force.

The legislature having imposed the duty upon a municipality to maintain an adequate police force, it follows that it is the duty of the municipality to preserve order, and in performing that duty the municipality is performing a governmental

function. It does not make any difference whether the duty is being performed under a city ordinance as such or a state law as such. See 38 Am. Jur., Municipal Corporations, section 620, page 317, and cases cited therein. So far as we have been able to discover, the courts have universally held that a city policeman in enforcing city ordinances is acting as an agent of the state, and that the city is therefore not responsible in damages for his conduct.

We see no basis in law or reason why a municipal corporation should be liable *in tort* when enforcing municipal ordinances and not liable when enforcing laws of the state, for in either case it acts as an arm of the state and in the public interest. The state has a vital interest and has made it the mandatory duty and one of the paramount functions of a city to maintain law and order within its territorial limits.

The courts throughout the land, in laying down the rule of exemption of a city from liability for the tort of police officers, have given various reasons for the rule. A statement of the Washington Court in Hagerman v. City of Seattle, 189 Wash. 694, 698, 66 Pac. (2d) 1152, 1154, 110 A.L.R. 1110, is particularly applicable: "It may now be said that the doctrine has become fixed as a matter of public policy, regardless of the reason upon which the rule is made to rest, and that any change therein must be sought from the legislature."

For the foregoing reasons the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE ANGSTMAN, concur.

MR. JUSTICE BOTTOMLY:

I agree with the result reached in that majority opinion, but not all that is said therein.

MR. JUSTICE ADAIR:

I dissent.